## STATE OF MAINE *vs.* J. FRANK WALKER.

Somerset.    Opinion August 31, 1885.

*Evidence.    Declarations.    Res gestæ.*

Where evidence of an act done by a party is admissible, his declarations made at the time, having a tendency to elucidate or give character to the act, and which may derive a degree of credit from the act itself, are also admissible as a part of the *res gestæ.*

The declaration becomes important as forming a part of the transaction itself, on the ground that what is said at the time affords a legitimate means of ascertaining the character of the act, and as a part of the circumstances to be given in evidence with the principal fact.

ON EXCEPTIONS.

The opinion states the case and material facts.

*Orville D. Baker,* attorney general, for the state, contended that the defendant's offer to prove what he, himself, said in reply to his father, is wholly inadmissible.

(1.) It is the declaration of the prisoner offered in his own behalf. (2.) It does not appear to have been, in any view, material. It was not admissible merely because it was a reply to the father's injunction not to fire, for it was still the prisoner's declaration, and there is nothing apparent in the question asked by the counsel, to show that the reply, in any way, served to characterize the act of shooting.

*Walton and Walton*, and *J. J. Parlin*, for the defendant, cited: *State* v. *Abbott*, 8 W. Va. 741; *Hamilton* v. *State*, 36 Ind. 281; *Little* v. *Commonwealth*, 25 Gratt. (Va.) 921; *Comfort* v. *The People*, 54 Ill. 404; *Baker* v. *Gansin*, 76 Ind. 317; *Castner* v. *Sliker*, 33 N. J. L. 95; *Mitchum* v. *State*, 11 Ga. 621; *Reed* v. *N. Y. Cent. R. R. Co.* 56 Barb. 493; *Preston* v. *State*, 4 Texas App. 186; *People* v. *Williams*, 18 Cal. 187.

FOSTER, J. The prisoner was indicted for murder, and the jury returned a verdict of murder in the second degree. The case is before the law court on exceptions.

At the time of the shooting, which was not far from nine o'clock in the evening, the deceased was in front of the respondent's house, either upon the piazza or in the yard very near to it. A party of eighteen persons had assembled for the alleged purpose, as claimed by the prosecution, of serenading the respondent, who had been recently married, and upon entering his grounds, the party commenced blowing horns, firing guns, ringing bells and making other noises, both in the yard and on the piazza of the house. The respondent, with his wife and father and two other persons, was in the house at the time. All had retired for the night, and no lights were burning. It was claimed by the respondent and his witnesses that after these demonstrations had continued at intervals for nearly an hour, some of the party outside made an assault upon the door and tried to burst it in, threatening to take the respondent's wife out into the yard, and making other threats against the respondent and his wife. The witnesses for the government denied that any assault was made upon the house, or that such threats were used or any provocation given for violence to be used against them by the persons in the house. The testimony of the respondent and his wife was that upon the first discharge of the guns, the wife became unconscious and so remained when the respondent left her in the bed-room shortly before he fired. The respondent stated that he took his pistol from the place where he had been in the habit of keeping it, on the table in his bed-room, and

placing it in his hip pocket, passed from the bed-room through the kitchen, through the entry, and across to the further side of the wash-room, and fired it first out of a window in an upward course, for the purpose of frightening away the party outside; that returning toward his bed-room, as he passed through the entry, hearing an assault made at that instant upon the house, accompanied by threats of violence toward himself and his wife, whom he then supposed to be lying insensible in her bed, under the excitement of the moment incident to such assault and threats, he discharged his pistol through the sidelight, but claimed it was not his pistol that did the killing. And he furthermore claimed that, if it was his pistol that did the killing, the excitement incident to the circumstances under which he was placed, at the moment of discharging it, was such as to justify the act, and if not a justification, that he should then be adjudged only guilty of manslaughter. While upon the other hand the government's position was, that, in any view of the case, the fatal shot was fired under such circumstances of motive, purpose and intent as constituted murder on the part of this respondent.

It appeared in evidence that Leonard H. Walker, father of the respondent, met him in the entry just at the moment the respondent discharged his pistol through the sidelight. In answer to the question " what, if anything, did you find or hear, " propounded by the respondent's counsel, he said : " At that time they were rattling the door ; they were trying to get into the ell door, and when I got to the entry door, I met Frank there, and they were trying at that time to get into the door, and Frank seemed to be frightened, and I put my arm on him and he was all of a tremble, and Frank spoke and —. " At this point, objection was interposed by the counsel for the state, to any statement by the witness as to what the respondent said, and the declaration was excluded, to which exception was taken by the respondent's counsel.

From the materially different standpoints taken by the government and the respondent in relation to the circumstances under which the fatal shot was fired, it became important to ascertain what those circumstances were; why the shot was

fired; in what condition of mind the respondent was at the time he discharged his pistol; whether the act was done with deliberation, or under such sudden excitement of fear, passion or provocation, as would reduce the offence of killing from murder to manslaughter. It was the province of the jury to determine these questions from the evidence before them. It lay in their power to find the respondent guilty of murder in the first or second degree; or they might find him guilty of manslaughter only. The motive with which the act of killing was done would necessarily be an important factor in governing their determination into which of the three grades of homicide this crime would fall. The principal fact was in evidence, and was material in the proper investigation of the case. Were the declarations of the respondent, accompanying the act, admissible in evidence? We are clearly of opinion they were, and should have been admitted in evidence as a part of the *res gestæ.*

" Where evidence of an act done by a party is admissible, his declarations made at the time, having a tendency to elucidate or give character to the act, and which may derive a degree of credit from the act itself, are also admissible as a part of the *res gestæ.* " *Sessions* v. *Little,* 9 N. H. 271. If the declaration is made by a party while doing an act, the nature, object or motive of which is the subject of inquiry, and serves to explain it, then such declaration is admissible in evidence. And it is generally in this class of cases, where either the nature, object or motive of the act is material, that this rule receives its broadest application. The declaration becomes important as forming a part of the transaction itself, on the ground that what is said at the time, affords a legitimate means of ascertaining the character of the act, and as a part of the circumstances to be given in evidence with the principal fact. As a learned author has expressed it, such declarations are admitted, " not to prove their own truth, but to exhibit the attitude of the parties, and to show the transaction in all its aspects. " 2 Whart. Ev. § 1102. Nor are such declarations said to be received as hearsay, but they are distinguished from it by their connection with the principal fact under investigation and which they serve to elucidate and explain.

In the case before us, the answer given by the father of the respondent, so far as it had proceeded at the time when the objection was raised, related to the circumstances immediately surrounding a principal fact which was then the subject of investigation — the firing of the fatal shot. The witness described the situation of the parties at the moment the shot was fired, and the appearance of the respondent as frightened and trembling; but when he attempted to state the respondent's declaration which accompanied the act, it was excluded. Such declaration was only a verbal act, and as competent as other testimony. Its weight was for the jury. *Insurance Co.* v. *Mosley,* 8 Wall. 408. Being excluded, the presumption is that such exclusion was detrimental to the interest of the party in whose behalf it was offered. *People* v. *Williams,* 18 Cal. 187. What bearing it might have had on the minds of the jury, had the evidence been admitted, is not a question for our consideration. The respondent was on trial for his life. He was entitled to the benefit of whatever legitimate evidence he could produce. It becomes unnecessary to consider the remaining exceptions.

*Exceptions sustained. New trial granted.*

PETERS, C. J., WALTON, DANFORTH, LIBBEY and EMERY, JJ., concurred.