STATE *vs.* WALTER MADDOX, and another.

Kennebec. Opinion December 29, 1898.

92 348
96 323

*Assault and Battery. Evidence. Res Gestae.*

Upon the trial of an indictment for an assault and battery it appeared that the party assaulted, after the affray was over and shortly after the participants had separated, made declarations in regard to it which were admitted, in behalf of the State, as part of the res gestae. *Held;* that such declarations are not to be deemed part of the res gestae, simply because of the brief period intervening between the occurrence and the making of the declarations, if the fact remains that the affray had ended before the declarations were made.

To render them admissible, they must be so intimately interwoven with the principal fact or event which it characterizes as to be regarded a part of the transaction itself.

*Held;* that the declarations in this case cannot be regarded as part of the res gestae and should have been excluded.

ON EXCEPTIONS BY DEFENDANT.

This was an indictment found and tried in the Superior Court for Kennebec County, charging the defendants with the crime of assault and battery upon Albert Hodges. There was an affray at the time and place alleged in the indictment, in the public high-way: The two defendants and said Hodges were present.

Sidney K. Fuller, one of the defendants, testified that he took no part in the affray whatever. Maddox, the other defendant, testified that all the acts of violence done by him on the occasion, were to repel the acts of assault and battery made upon him by said Hodges, who, he claims, assaulted him with a stake. He admitted that he, with a shovel, repelled the blows aimed at him by said Hodges with the stake, and that in so doing he hit said Hodges on the arm and shoulder, but he denied that he hit Hodges on the head.

Hodges in his testimony claimed that Maddox commenced the assault upon him with a shovel, hitting him on the arm, shoulder and head, and that while Maddox was doing that, Fuller was urging Maddox on and holding Hodges' horse by the bit. This both Maddox and Fuller denied.

The affray took place in the highway ten hundred and sixty feet from said Hodges' dwelling-house, where his wife was when the affray took place. Mrs. Hodges testified that she heard the outcry up the street and run out of her house into the road; that she looked up the street and saw the parties in the highway, and that she heard certain violent words passing between her husband and Maddox, but she saw no blows struck, and that she saw her husband turn his team around towards her. Then she, in answer to interrogatories by the County Attorney, testified as follows:

"When I saw he had turned, I turned and ran back to the house, and he drove back about as fast as the horse could come, that is a trotting gait, and drove down round to the stable. As he came down the road, he called to me and seemed in a good deal of distress, and took on terribly; the first words he said, 'Sadie, get your bonnet'."

Mr. Brown:  "I object."

Question by the County Attorney:  "How soon after you saw him in the road down there, was it before you heard him say what you were about to tell us."

Ans.  "It might have been half a minute. I don't think it could have been a minute."

Mr. Heselton:  "I offer it as a part of the res gestae, his account and what he said at that time."

Mr. Brown:  "I object."

The Court:  "He may answer."

Mr. Brown:  "I except."

Exceptions entered.

Answer:  "I cannot give his exact words, for he said a good deal and took on. He wanted me to get my bonnet and go with him; that Fuller and Maddox had stopped him in the road and assaulted him and Maddox had pounded him with a shovel and broken his arm, and pounded him on the head, and Fuller held his horse and backed him up and broke the breeching. He told me that as we were going down here (indicating a point on the plan) and he kept on after he got into the barn, talking on like a man in distress, and telling me about it. I helped him take the harness off. He said his arm was broken and he took on a good deal, and

he wanted me to look at his cap to see if his cap or collar was not cut. He said he had struck him on the head. I looked at his cap. His collar was turned up. He said he had got a blow on his head, but his fur collar was turned up to his cap nearly."

Question by the County Attorney; "Did he complain of any blows except in the arm and head?"

Answer: "No, he said they had pounded him terribly."

Mr. Brown: "Your Honor allows all this to come in under that question, I suppose?"

Court: "Yes, what he said within two or three minutes time."

Albert Hodges, called by the government, in cross-examination by the defendants' counsel, testified as follows:

"I have brought an action for civil damages."

Question, "How much have you sued for?"

Mr. Heselton, the County Attorney: "I object."

The Court: "Excluded."

The following testimony was then taken:

Mr. Brown: "It seems to me that the extent of it was proper and the court thinks otherwise."

The Court: "As bearing upon the amount of injury."

Mr. Brown: "No, as bearing upon the bias and influence under which the witness testifies. He is seeking damages for himself."

The Court: "It is to be presumed that he may testify under some feeling, perhaps, a bias."

Mr. Brown: "Yes, but there are various kinds of bias."

The Court: "Well he has brought suit anyway. I think that is all necessary to show."

Mr. Brown: "Yes, one is injury and the other is dollars and cents. I think I will have exceptions on that, your honor."

Court: "Very well."

Dr. W. P. Giddings, an experienced physician and surgeon, called by the government, gave the following testimony:

Question by the County Attorney: "Assuming that a man received a blow on the top of the head twenty-two days before you saw him, in the condition you found him in on that day, may the condition at that time have been produced by the blow?"

Mr. Brown:   "I object."

The Court:   "I cannot really see how that is material to the issue involved here."

Mr. Heselton:   "I want to show the extent of the injury."

The Court:   "It can only come in on the question of sentence."

Mr. Heselton:   "I can conceive of its being admissible in this way; blows inflicted beyond the legitimate self defense."

The Court:   "I see. If you can connect the condition of the man at that time. with the blows he received."·

Mr. Brown:   "The question goes in subject to my objection and exception."

The Court:   "Yes."

Witness answers:   "It might have been."

The jury returned a verdict of guilty as to the defendant Maddox, but disagreed and rendered no verdict as to the defendant Fuller.

To the foregoing rulings of the presiding justice and the admission of said testimony of Mrs. Hodges, Mr. Hodges and Dr. Giddings, the defendants' counsel seasonably objected and took exceptions.

*Geo. W. Heselton,* County Attorney, for State.

The chief objection of the defendant is to the admission of Mrs. Hodges' testimony as to what Mr. Hodges said on his return from the first assault, when he was suffering from a broken arm, a bruised body and a concussion of the brain (as it afterwards proved) one-half a minute after the assault. This testimony is admissible as a part of the res gestae.

Counsel cited:   Wharton, Cr. Ev. 262, 263; *Kirby* v. *Commonwealth,* 77 Va. 681, (46 Am. Rep. 747); *Warren* v. *State,* 7 Tex. Ct. App. 619, (35 Am. Rep. 745); *People* v. *Simpson.* 48 Mich. 747; *Com.* v. *McPike,* 3 Cush. 181; *Lambert* v. *People,* 29 Mich. 71; *Johnson* v. *State,* 65 Ga. 94; *Insurance Co.* v. *Mosley,* 8 Wall. 397; *State* v. *Molisse,* 38 La. Ann. 381, (58 Am. Rep. 181, and note); *Lewis* v. *State,* 29 Tex. App. 201; *Flannigan* v. *State,* 64 Ga. 52; *Keyes* v. *State,* 122 Ind. 527.

21st Am. & Eng. Ency. Law, 113, n. 3, says:   "No inflexible

rule as to the length of the interval between the act charged against the accused and the act or declaration of the complaining party can be formulated. In that matter the facts of each case stand alone, and must speak for themselves. In each case, the particular facts and instances must be considered as an independent group and the judge must determine whether they fall within or without the operation of the rule." *State* v. *Molisse*, supra.

In *Delaware L. & W. R. Co.* v. *Ashley*, 67 Fed. Rep. 209, at p. 213, the court says: "In the nature of things there cannot be a sharply defined line between what is and what is not permissible as a part of the res gestae. In this debatable region a margin must be left for the exercise of the sound discretion of the trial judge." Chamberlayne's Best on Evidence, p. 446.

*S. S. and F. E. Brown*, for defendant Maddox.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

STROUT, J. Defendants were indicted for assault and battery upon Albert Hodges. Ten hundred and fifty feet from the house of Hodges, the parties had an affray in the highway, in which it was alleged that Maddox struck Hodges with a shovel and broke his arm and inflicted other injuries. Hodges' wife while in his house, heard outcries, and "run out of her house into the road, looked up the street and saw the parties in the highway," and heard violent words between Hodges and Maddox, "but she saw no blow struck." She saw Hodges turn his team around towards her, and she then run back into the house, and Hodges "drove back about as fast as the horse could come, that is a trotting gait, and drove down round to the stable." She says it was about one-half a minute, she does not think over one minute, from the time she saw Hodges in the road with Maddox, when as he was going down to the barn, Hodges told her, "that Fuller and Maddox had stopped him in the road and assaulted him, and Maddox had pounded him with a shovel and broke his arm, and pounded him on the head and Fuller held his horse."

This declaration of Hodges the court admitted as part of the res gestae, against defendants' objection, and exception was taken to its admission. Hodges himself was a witness at the trial, and this declaration appears to have been introduced to corroborate his testimony.

Does it fall within the rule as to res gestae? The rule itself is well stated in *Enos* v. *Tuttle*, 3 Conn. 250, that the declarations to be admissible, " must have been made at the time of the act done, which they are supposed to characterize, and have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction."

It is said in *Lander* v. *People*, 104 Ill. 248, that, " the true test of the admissibility of such testimony is, that the act, declaration or exclamation must be so intimately interwoven with the principal fact or event which it characterizes, as to be regarded a part of the transaction itself, and also to clearly negative any premeditation or purpose to manufacture testimony." *State* v. *Wagner*, 61 Maine, 194.

These definitions are in accordance with the decisions in this country and England. But in their application to varying circumstances there has been a diversity of opinion, and the cases are not always in harmony. In *Commonwealth* v. *McPike*, 3 Cush. 181, declarations were admitted as res gestae which do not seem to fall within the generally accepted doctrine. But later cases in Massachusetts appear to adopt a narrower rule, in harmony with the definition before given. *Lund* v. *Tyngsborough*, 9 Cush. 36 ; *Commonwealth* v. *Hackett*, 2 Allen, 138 ; *Commonwealth* v. *Densmore*, 12 Allen, 537. See also *New Jersey Steamboat Co.* v. *Brockett*, 121 U. S. 648. In *Vicksburg & Meridian R. R.* v. *O'Brien*, 119 U. S. 99, the declaration of the engineer of the train, made ten to thirty minutes after an accident, as to the speed of the train, was excluded as not being part of the res gestae. The court in that case said : " It is not to be deemed part of the res gestae, simply because of the brief period intervening between the accident and the making of the declaration. The fact remains that the occurrence had ended when the declaration in question was made."

To apply this principle here: when Mrs. Hodges looked out of her house, on hearing an outcry, the affray had ended. She saw no blows struck, but heard angry words. Immediately her husband turned his team and drove home, and on his arrival made the declarations to her. They were not made at the time of the assault and so coupled with it as to be explanatory of it, but were made after it was all over and the parties had separated. They can in no just sense be treated as part of the res gestae, and were inadmissible.

Sound public policy requires that the established rule as to this. class of evidence, should be strictly adhered to and not extended. It is a species of evidence liable to abuse, and when, as in this case, the party making the declaration is a witness at the trial, testifying to the facts, his declarations made at any time, however short, after the occurrence has ended, in regard to the occurrence itself is mere narrative, and should not have the force of corroborative evidence, unless they are strictly and unquestionably a part of the res gestae. They are not so in this instance.

Cases may be found in other jurisdictions where the rule has been applied more broadly, if not loosely, but we think the better view is in harmony with the more limited construction we have given.

The ruling in question being erroneous, it is unnecessary to consider the other exceptions.

*Exceptions sustained.*