98 A.2d 652 (1953)
STATE
v.
RANGER.
Supreme Judicial Court of Maine.
July 8, 1953.
Frederic S. Sturgis, County Attorney, Portland, for plaintiff.
I. E. Cohen, Portland, for defendant.
Before MERRILL, C. J., and THAXTER, FELLOWS, MURRAY, WILLIAMSON, and TIRRELL, JJ.
FELLOWS, Justice.
This is an indictment brought in the Superior Court for Cumberland County against the respondent Alva Ranger for taking indecent liberites with a minor under the age of sixteen years. The jury returned a guilty verdict. During the trial the respondent seasonably took exceptions to various *653 rulings of the Court on the ground that they were erroneous and prejudicial. Exceptions are sustained.

First and Second Exceptions
The first witness called by the State was Barbara Anne Reichert, age 10, and she was questioned by counsel on the matter of her qualifications. Some of the questions and her answers are as follows:
"Q. What is the difference between the truth and a lie, Barbara? A. No answer.
"Q. Do you know? A. (Shakes head) No.
"Q. Do you know what it is to take an oath? A. (Shakes head) No.
"Q. For the record, your answer is you don't know the difference between the truth and a lie; is that right? A. (Nods) Yes.
"Q. You have talked this case over with your mother? A. (Nods) Yes.
"Q. Did your mother tell you what to say? A. (Nods) Yes.
"Q. Did she tell you you would get a licking or something like that if you didn't tell? Did she tell you she would hit you with a strap or something? A. Hit me with her hand.
"Q. Did she tell you what to say when you went upstairs to the Grand Jury to tell your story, when you went upstairs to tell the story to those people up there, you went with your mother? A. Yes, I went with my mother.
"Q. Sure; your mother was there. Didn't your mother tell you what to tell those people in there? A. (Nods) Yes.
"Q. Did you hear that question? Did the Sergeant (Officer Kearns), the man who stood up in the back tell you what to say? A. (Nods) Yes.
"Q. What is the difference between right and wrong, do you know? A. (Shakes head) No.
"Q. You don't know? May that go for the record? A. (Shakes head) No.
"Q. Did you tell your mother the night you came home that night what had happened? A. (Nods) Yes.
"Q. Did she tell you when you came home what you should say? A. (Nods) Yes.
"Q. Was it any different than what you told her that night? A. (Nods) Yes."
Another witness for the State was Sharon Anne Rickett, age 8, and she was questioned on the second day as follows:
"Q. Did anyone explain the difference between truth and lies to you? A. Yes.
"Q. Who? A. My mother.
"Q. Did she tell you in case they asked you that question on the stand what to answer? A. Yes.
"Q. That is right. She told you if the attorney, me, the lawyer, asked you the question, you are supposed to answer that there is a difference? A. (Nods) Yes.
"Q. Is that right? A. Yes.
"Q. Up to yesterday you didn't know the difference, did you? A. (Shakes head) No.
"Q. Do you know what the truth means? A. No.
"Q. You don't know what an oath means, do you? A. No."
The presiding Justice permitted both children to testify.
It has long been recognized in Maine that a child of tender years, capable of distinguishing between good and evil, may in the discretion of the Court be examined on oath. If permitted to testify, after preliminary examination as to qualification, the statements of such a witness are submitted to the consideration of the jury who should regard the age, the understanding, and the sense of accountability for moral conduct, in coming to their conclusion. State v. Whittier, 21 Me. 341; State v. Dorathy, 132 Me. 291, 170 A. 506. Greenleaf thus states the rule: "But in respect to children, there is no precise age within which they are absolutely excluded, on the presumption that they have not sufficient understanding. At the age of fourteen, every person is presumed to have common discretion and understanding, until the contrary *654 appears; but under that age, it is not so presumed; and therefore inquiry is made as to the degree of understanding which the child, offered as a witness, may possess; and if he appears to have sufficient natural intelligence, and to have been so instructed as to comprehend the nature and effect of an oath, he is admitted to testify, whatever his age may be. This examination of the child, in order to ascertain his capacity to be sworn, is made by the Judge, at his discretion; and though, as has been just said, no age has been precisely fixed, within which a child shall be conclusively presumed incapable, yet, in one case, a learned Judge promptly rejected the dying declarations of a child of tender years, observing, that it was quite impossible that she, however precocious her mind, could have had that idea of a future state, which is necessary to make such declarations admissible. On the other hand, it is not unusual to receive the testimony of children under nine, and sometimes even under seven years of age, if they appear to be of sufficient understanding; and it has been admitted even at the age of five years. If the child, being a principal witness, appears not yet sufficiently instructed in the nature of an oath, the Court will, in its discretion, put off the trial, that this may be done." I Greenleaf on Evidence, 6th Ed., 476, Sec. 367.
The question of the competency of a child to testify is addressed largely to the discretion of the presiding Justice, but it is judicial discretion. It must not be an arbitrary decision. It must be based, not only on the appearance of the child, but it also must be based on what answers the child makes to show that he, or she, is qualified to testify. The proposed child witness should know the difference between truth and falsehood, and apparently must be able to receive accurate impressions of facts, and be able to relate truly the impressions received. The child witness should have sufficient capacity to understand, in some measure, the obligation of an oath; or to realize that it is wrong to falsify, and that if he does tell an untruth that he is likely to be punished. See 58 Am.Jur. "Witness", 97, Secs. 129-136 and cases cited.
In this case the respondent was fond of children. He had been a Scout Master, a 4-H Club leader, had been in charge of girl's summer camps, and the like, for thirty-five years. Because they asked him for a ride, he took at least three girls, on this day in question, to an apartment where he adjusted or repaired an oil burner. Three children played "hide and seek" in the apartment and insisted that the respondent give them "piggy back rides." The alleged assault, which was to the effect that the respondent completely felt of her under her clothes, took place while one or more of the other children were there, and with all doors of the apartment open. The mother testified that she had forbidden her daughter to go to ride and when the daughter came home she "was happy when she came in." The mother says she "gave her a good whack" because she was late. The child testified she got "a licking." The child cried at the punishment and later when going to bed the child made the "complaint" to the mother, which is the subject of the third and fourth exceptions in this case.
Each of these two children was presented as an important witness in a serious case, and each makes statements in preliminary examination that show positively that they did not know the difference between truth and falsehood. The testimony of each is undoubtedly colored, if not prevaricated, through the coaching and instruction of a mother, as both preliminary examinations indicate.
Although many ancient proverbs indicate that some of our ancestors believed that only truth could come from childhood lips, we know through modern psychology that protective imagination is a common attribute of most children, and that a child will naturally attempt to blame someone else as the cause of disobedience. Add to this the suggestions of a mother who may be anxious or suspicious, and the child will in some instances adopt the suggestions in self-protection. Great care must be exercised by the Court, not only to discover the one who may be guilty, but also to make sure that no innocent person is unjustly convicted.
*655 The testimony of these children should not have been received. It was an abuse of discretion and prejudicial error to permit either to testify.

Third and Fourth Exceptions
Mrs. Anne Reichert, mother of the prosecutrix, was permitted, subject to objection and exception, to testify to the details of an alleged complaint made to her by her daughter after the daughter came home, and after the mother had punished her. Barbara came home "happy," but was severely punished by her mother for her disobedience in staying late. The Court stated that he admitted the claimed details of the alleged complaint as part of the res gestae.
The doctrine of res gestae (things done) or "verbal act doctrine" is, that whenever evidence of the act is admissible, statements made at the time of the act, having a tendency to elucidate or give character to the act, are also admissible. Declarations made at the time may become important as forming a part of the transaction itself. Such declarations are "verbal acts" and as competent as other testimony for the consideration of the jury; statements made by respondent when firing shot, State v. Walker, 77 Me. 488, 1 A. 357; recognition of murderer by dying victim, State v. Wagner, 61 Me. 178, 195; statements at time of writing a letter dictated by respondent, State v. Bartley, 105 Me. 505, 74 A. 1129; declaration when changing residence or domicile, Holyoke v. Estate of Holyoke, 110 Me. 469, 87 A. 40.
The declarations must be so interwoven with the principal fact or event as to be regarded as part of the transaction itself, and also to negative any premeditation or purpose to manufacture testimony. State v. Maddox, 92 Me. 348, 42 A. 788, where declarations made a few minutes after an assault were held erroneously admitted; so was a statement three or four minutes after an accident not admissible because not "spontaneous exclamation accompanying an act". Barnes v. Rumford, 96 Me. 315, 52 A. 844, 847. See 32 C.J.S., Evidence, §§ 403-421, pp. 19-55, and 20 Am.Jur. "Evidence," 553, Secs. 661-685 where Maine cases are cited. See also Bouvier's Law Dictionary, Third Revision, "Res Gestae" citing State v. Wagner, 61 Me. 178.
The statements of the child to her mother, in which she related the details of the alleged acts of the respondent, were not made under such circumstances nor were they made at such a time as to constitute a part of the res gestae. The fact that a complaint was made was admissible, but the details and particulars of the complaint were not. It was prejudicial error to admit testimony of the mother containing the recital thereof by the daughter to her. In State v. King, 123 Me. 256, 258, 122 A. 578, our Court discussed the doctrine of res gestae and the admission of evidence relating to details of a complaint. The Court say, in affirming the rule given in State v. Maddox, 92 Me. 348, 42 A. 788: "There is practical unanimity of opinion that the fact that such a complaint was made is always admissible as a part of the state's evidence in chief, if the prosecutrix takes the stand, in corroboration of her evidence, but not the details of the complaint." [123 Me. 256, 122 A. 579.]
It is not necessary to discuss other exceptions taken by the respondent, nor it is necessary to consider the motion for new trial made to the presiding Justice and the appeal. The entry must be
Exceptions sustained.