**STATE of Maine**

v.

**Norman ELLIS.**

Supreme Judicial Court of Maine.

Nov. 20, 1972.

Peter W. Culley, Asst. Atty. Gen., Augusta, for plaintiff.

Vafiades, Brountas & Kominsky, by Lewis V. Vafiades, Susan R. Kominsky, Bangor, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

This is an appeal from a conviction of murder. For reasons which will appear the appeal must be sustained.

Mr. and Mrs. Woodbury, called by the State, testified that in the early morning hours of July 9, 1970 they were awakened by a knock on their door. Mrs. Woodbury went to the door and recognized the woman waiting there as Mrs. Labrie who occupied an apartment across the street. Mrs. Labrie was carrying her baby. Over objection, these witnesses were permitted to relate the ensuing conversation. Mrs. Woodbury gave the following testimony:

"Q. Could you tell us what this conversation was that you had, Mrs. Woodbury, with this other woman?

"A. She asked me if she could step in and use the telephone, and I told her that I didn't have one but I opened the door and she stepped inside and she said there was a man across the street that had a gun and was threatening to kill her if she didn't go with him, kill her and all the children if she didn't go, and she said she gave him the excuse that she wanted me for a baby sitter and she didn't know where she was going to go because I had no phone. I said, 'Wait a minute. I will wake my husband up,' and I started to go out where my husband was and he thought that they were drinking so he said, 'What are they, all drunk?' And she said, 'No, we are not. Thank you,' and she walked out and slammed the door."

Mr. Woodbury, having overheard the conversation from his bedroom, gave a less detailed but essentially consistent account of the conversation. Immediately after the departure of Mrs. Labrie, Mr. Woodbury dressed rapidly and left in his car to procure a police officer. Just before leaving his home he observed Mrs. Labrie carrying her child and walking alone up Center Street which is described as being a hill or upgrade in that area. She was then "halfway up the hill." About five minutes after Mrs. Labrie had left the Woodbury home, Mrs. Woodbury heard several shots. Mr. Woodbury, arriving at the top of the hill with an officer very soon thereafter, found Mrs. Labrie lying dead in the street, her wounded baby close to her body, and the defendant lying seriously wounded nearby. Except for the defendant's own testimony, there is no independent evidence of his whereabouts or conduct immediately preceding Mrs. Labrie's call at the Woodbury home. He asserts that he was in the Labrie apartment awaiting her return.

The Justice below, after hearing the proffered evidence on an offer of proof in the absence of the jury, ruled it admissible "under the rule of res gestae." The Court was of the opinion that the statement was made by Mrs. Labrie "while the offense was being committed." Wigmore on Evidence, 3d Ed., Vol. VI, p. 131 discusses spontaneous exclamations which under appropriate circumstances are admitted under an exception to the hearsay rule. As he carefully points out, we are here dealing with a true exception to the hearsay rule, the statement being offered for the truth of the matter asserted and the declarant not being available for cross-examination. He contrasts spontaneous exclamations with verbal acts which cannot properly be characterized as hearsay because not offered for the truth of the matter asserted. There are many situations in which the mere fact that certain words were uttered under certain circumstances is material to issues being tried, whether the words were true or not.[1] Professor Wigmore documents his conclusion that courts have too often tended to overlook this distinction and apply to one the rules of admissibility peculiar to the other.

■ Wigmore's text describes the rationale for the exception for spontaneous exclamations in these terms in Sec. 1747 at page 135:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts."

Just as dying declarations are presumed trustworthy because of the truth compelling force of the awful circumstance in which the dying declarant knows himself to be, so the spontaneous statement is deemed trustworthy because of the impact of shock or terror which while it continues destroys the will and capacity to fabricate a story. State v. Wagner (1873) 61 Me. 178, 195.

■ There must be some occurrence startling enough to produce this nervous excitement and render the utterance spon-

---

1. Words of contract or slander are examples of verbal acts. The mere fact that the words were uttered is itself a material fact. Wigmore, supra, at page 134.

taneous and unreflecting. The utterance must have been before there has been time to contrive and misrepresent, i. e. while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. The statement need not be strictly contemporaneous with the exciting cause but must have been made before there had been time to contrive and misrepresent. The utterance must relate to the circumstances of the occurrence preceding it. Wigmore, supra.

Wharton's Criminal Evidence, 12th Ed., Vol. 1, page 632 states, "As stated by some of the courts, there must be such a spontaneity that the declaration can be regarded as the event speaking through the declarant rather than the declarant speaking for himself. If the court concludes that the declarant was merely narrating what had occurred, the declaration is inadmissible."

These principles were scrupulously observed when we affirmed the admissibility of spontaneous statements in Hersum, Admr. v. Kennebec Water District (1955) 151 Me. 256, 270, 117 A.2d 334 and State v. Chaplin (1972—Me.) 286 A.2d 325, 328 and when we denied admissibility in State v. Ranger (1953) 149 Me. 52, 58, 98 A.2d 652.

 In the case before us the content of the statement of Mrs. Labrie relates only to the conduct of the defendant. Viewed merely as verbal acts, not offered for the truth of the matter asserted, the words uttered have no relevance to any issue. Their relevance depends upon their being true and when offered for the truth of the matter they assert, they must meet the tests of spontaneity. They were made *before* the shooting, the only "occurrence" of which we have any evidence. If something had happened to produce the shock which assures spontaneity, we do not know what it was or when it had occurred. For aught that appears to the contrary, Mrs. Labrie may have had adequate time for reflection and to make a considered determination as to just what she would say to the Woodburys. She was not so shocked or terrified as to ask her neighbors to call the police or to seek sanctuary in their home. On the contrary, she apparently took immediate umbrage at the suggestion that she and others in her household might be drunk and abruptly left. We conclude that the protective principles which alone permit the admission into evidence of what would otherwise be inadmissible hearsay testimony were not met on these facts and the evidence should have been excluded. Since this was the only direct evidence of express malice in the case and flatly contradicted the defendant's later assertions as a witness, we cannot say that the error was harmless even though the evidence of felonious homicide from which malice is implied was very strong.

Since this case must be tried anew we deem it unnecessary to discuss other arguments advanced by the defendant in support of his appeal.

Appeal sustained.

New trial ordered.

All Justices concurring.