STATE of Maine

v.

Frederick W. WALTON.

Supreme Judicial Court of Maine.

Argued March 12, 1981.

Decided Aug. 3, 1981.

David M. Cox, Dist. Atty., Gary F. Thorne Asst. Dist. Atty., (orally), Bangor, for plaintiff.

Libhart, Ferris, Dearborn, Willey & Ferm, Joel A. Dearborn (orally), Brewer, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN,* ROBERTS and CARTER, JJ.

ROBERTS, Justice.

Frederick W. Walton appeals the judgment of conviction for unlawful sexual contact, 17–A M.R.S.A. § 255 (Supp.1980), entered against him on a jury verdict in the Superior Court, Penobscot County. Walton asserts that the presiding justice erred in permitting the six-year-old prosecutrix to testify and in admitting in evidence testimony of what the prosecutrix told her

* GLASSMAN, J., sat at oral argument and participated in the initial conference but died before the opinion was adopted.

mother about the alleged criminal event several hours after it happened. We find no error in permitting the prosecutrix to testify, but we vacate the judgment on the grounds that the court erred in admitting hearsay testimony.

From the evidence admitted at trial, the jury could have found the following facts beyond a reasonable doubt. The child who complained against Walton was frequently in his home, where Walton's daughter would babysit her and her younger brother. During the afternoon of February 20, 1980, while the prosecutrix was resting on a bed on the second floor of Walton's home, Walton entered the room, lowered her pants, and touched her in the area of her vagina with his finger.

### I

*Competence of the Six-Year-Old Witness*

Before he permitted the six-year-old prosecutrix to testify, the presiding justice conducted a voir dire proceeding in which he, as well as the prosecutor and defense counsel, questioned the young girl. Their questioning proceeded along the lines suggested by M.R.Evid. 601(b), which provides in pertinent part:

> **(b) Disqualification of witness; interpreters.** A person is disqualified to be a witness if the court finds that (a) the proposed witness is incapable of expressing himself concerning the matter so as to be understood by the judge and jury either directly or through interpretation by one who can understand him, or (b) the proposed witness is incapable of understanding the duty of a witness to tell the truth.

On his appeal, Walton challenges only the prosecutrix's ability to understand the duty of a witness to tell the truth.

When a witness of tender years is proposed, "the court must exercise its sound judicial discretion to evaluate the child's testimonial competency under Rule 601 on the basis of the totality of the voir dire." *State v. Vigue*, Me., 420 A.2d 242, 246 (1980); *see also State v. Pinkham*, Me., 411 A.2d 1021, 1024 (1980). Here, the child's answers on voir dire clearly showed she knew what it meant to tell a lie. The voir dire further established that the child knew that it was wrong to lie and that the consequence of lying would be to "get into trouble." Any inability on the part of the child to articulate in further detail the consequences of lying must be looked at in the context of her overall responses during the voir dire. Despite her youth, the prosecutrix understood the questions propounded to her and gave intelligent answers that showed an ability and desire to differentiate between truth and falsity. She knew that she should not lie and that "trouble" would come to her if she did. She more clearly stated the consequences of falsehood than did the child witness in *Vigue*, 420 A.2d at 245 n.2. On the totality of her voir dire, there is no basis for an appellate court to hold that the trial justice abused his discretion in determining that the prosecutrix understood the duty of a witness to tell the truth. He committed no error in receiving the testimony of the six-year-old victim of the allege crime.

### II

*Hearsay Testimony of the Mother*

Under the "excited utterance" exception to the hearsay rule, M.R.Evid. 803(2), the presiding justice allowed the prosecutrix's mother to testify to what her young daughter reported Walton had done to her earlier on the same day. Before admitting those hearsay statements for the truth of the matter asserted,[1] the trial court made preliminary findings pursuant to M.R.Evid. 104(a). We hold that admission of these statements was error because (1) the record does not support the preliminary findings necessary for admission of an excited utter-

---

1. The hearsay statements of the prosecutrix were introduced in evidence through the testimony of her mother as a part of the State's affirmative case, and not merely for the limited purpose of rebutting a charge of recent fabrication. *Compare* M.R.Evid. 803(2) *with* M.R. Evid. 801(d)(1).

ance, and (2) the record demonstrates that the presiding justice misconceived the applicable rule.

█ The trial court must make three findings before admitting a hearsay statement under the excited utterance exception: (1) that a startling event occurred; (2) that the hearsay statement related to the startling event; and (3) that the hearsay statement was made while the declarant was under the stress of *excitement caused by that event.* M.R.Evid. 803(2). The trial court could and did find the first two requirements here. Furthermore, the evidence indicates that the prosecutrix was under stress when she made the utterance. The record, however, does not support a finding that the prosecutrix was then under the stress of *excitement.*

Apparently by agreement of the parties [2] and consistent with M.R.Evid. 104(c), the court entertained a *voir dire* examination of the prosecutrix's mother to determine the admissibility of the prosecutrix's statements made to her mother on the evening of February 20, 1980, containing the details of a sexual assault committed that afternoon. No other conclusion can be drawn from the mother's testimony but that the prosecutrix had been under stress for at least two days prior to the utterances in question. The prosecutrix described other sexual incidents occurring prior to February 20. The mother testified that her daughter was "acting out," acting "really different," and saying that "her heart hurt" and that she "was really bad" over a period of two days prior to the events on the evening of February 20. She further described her daughter just prior to the utterances in question as acting out, nervous, saying that she had been bad, that she "had a black mark on her heart" and that she was afraid of the defendant.

█ Clearly, the child was under a great deal of stress and had been for at least two days. Equally clearly, the child's

stress was not the "stress of excitement" caused by the events of February 20. We do not emphasize the *duration* of the stress, as much as the *cause* of the stress. In fact, the record does not support a finding of "stress of excitement" at all. The stress of conscience, of guilt, or of fear are not to be equated with "stress of excitement." The trustworthiness of an excited utterance (and hence its admissibility without the necessity for cross-examination of the declarant) is based upon the theory that the impact of the event produces an utterance that is "spontaneous and unreflecting." *State v. Ellis*, Me., 297 A.2d 91 (1972). In this case it is obvious that the victim's stress resulted from reflecting, even brooding, over several past incidents.

The commentary to Rule 803(2) in the advisers' note and in R. Field & P. Murray, *Maine Evidence* § 803.2 (1976), make clear that the rule did not change existing Maine law, albeit pre-rule cases deal with the exception under the *res gestae* or "verbal act" rubric. The basis of the rule as well as the requisite circumstances for its application are set forth in *Ellis*. Under circumstances similar to this case in *State v. King*, 123 Me. 256, 122 A. 578 (1923), we described and distinguished the various ways in which the utterances of the prosecutrix may become admissible. We there found error in admitting *details* of the prosecutrix's complaint, citing *State v. Maddox*, 92 Me. 348, 42 A. 788 (1898), while reaffirming the well-established rule that the *fact* that a complaint had been made was admissible as part of the state's case in chief. *King*, 123 Me. at 258, 122 A. at 579; *accord, State v. Ranger*, 149 Me. 52, 59, 98 A.2d 652, 655 (1953); *State v. Mulkern*, 85 Me. 106, 26 A. 1017 (1892).

█ We decline to broaden what has been a narrow exception to the hearsay rule, particularly in an area so fraught with

---

**2.** We have no record of the agreement or of the intended scope of the *voir dire* hearing, but at its conclusion the court indicated that its ruling "related to exceptions to the hearsay rule" only. We are satisfied, therefore, that the defendant's objection extended only to the hearsay statements. See note 3 *infra.*

danger to our conception of a fair trial.[3] As we said in *State v. Maddox*, 92 Me. 348, 354, 42 A. 788, 790 (1898): "Sound public policy requires that the established rule as to this class of evidence, should be strictly adhered to and not extended. It is a species of evidence liable to abuse ...." We vacate the judgment of conviction in this case because of the absence of evidence to support the admission of the hearsay statement of the prosecutrix.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.

---

**3.** The procedure followed in this prosecution approached the level of obvious error. The mother was permitted, without objection, to describe in vivid detail her own *emotional* reaction to her daughter's recital. This testimony was elicited in response to the prosecutor's question: "After she told you all of this, how did you react?" The prosecutor should have

known that such testimony was not admissible. *See State v. Gaudette*, Me., 431 A.2d 31 (1981).