STATE of Maine

v.

Linfield FRANKLIN.

Supreme Judicial Court of Maine.

Argued May 3, 1984.

Decided July 11, 1984.

James E. Tierney, Atty. Gen., Anita M. St. Onge (orally), Rae Ann French, Fernand Larochelle, Charles K. Leadbetter, Asst. Attys. Gen., Augusta, for plaintiff.

Jeffco, May & Smart by Stephen T. Jeffco (orally), Stephen D. Mau, Portsmouth, N.H., for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, and GLASSMAN, JJ.

ROBERTS, Justice.

For the second time Linfield Franklin appeals from a conviction of murder, 17-A M.R.S.A. § 201(1)(A) (1983), based upon a jury verdict in Superior Court, York County. On appeal he argues (1) that the admission of testimony concerning evidence that was lost prior to trial denied him a fair trial and violated due process of law; (2) that the court erred in admitting certain hearsay testimony; (3) that he was prejudiced by a testimonial reference to the previous trial; and (4) that the presiding justice erred in his instruction to the jury regarding burden of proof. We affirm the judgment.

## I.

Linfield Franklin began drinking beer in his Kittery apartment, along with his girlfriend, Jeanette Smith, and several other friends, at about 8:30 p.m. on November 19, 1981. Between 8:30 p.m. and 4:30 a.m., when the party finally broke up, Franklin consumed a substantial quantity of beer. During the course of the evening he argued several times with Jeanette, and at about 4:30 a.m. he confronted her in an upstairs bathroom. They argued, she apparently cursed at him, and he discharged a .38 caliber Smith & Wesson revolver

twice—once into the bathroom ceiling, and once into Jeanette's forehead. Franklin was arrested the following day in Portsmouth, New Hampshire. Jeanette died several days later of the head wound.

In 1982 a York County jury found Franklin guilty of murder. On appeal we vacated that conviction. *State v. Franklin*, 463 A.2d 749 (Me.1983). Franklin's retrial and second conviction of murder results in the present appeal. The issues now before us are unrelated to the issues raised in Franklin's first appeal.

II.

Between the first and second trials, seven bullets that were retained as state's evidence in the custody of the Clerk of Courts disappeared. Five of the bullets had been on the defendant's person at the time of his arrest. A sixth was recovered from the bathroom ceiling, and a seventh was excised from the victim's brain during an autopsy. At the first trial, all seven bullets were introduced into evidence, but at the second, the state was forced to rely on testimony by a firearms examiner employed by the Maine State Police crime laboratory in Augusta, who had examined the projectiles. No objection was made to the testimony when it was entered, but an oral motion *in limine* was made at the beginning of trial in an unsuccessful attempt to have the testimony excluded, and an alternative motion for a mistrial or to have the testimony stricken was made toward the end of the trial.

In his initial motion to exclude the testimony, defense counsel stated that "I ... want the record to reflect that the defendant is not saying that through negligence, or inadvertence, or some underhanded scheming that the state does not have this evidence, or it has no desire to introduce it. I'm sure the state would like to introduce it." Likewise, in moving for a mistrial, defense counsel stated that "I'm not saying the state did anything wrong. I will stipulate on the record it was beyond the control of the state." [1] On appeal, defense counsel does not suggest, nor does the record reflect, that the disappearance of this evidence in any way frustrated discovery efforts made by the defendant. Nevertheless, Franklin urges that the decision to admit testimony concerning examination of the bullets prejudiced his right to a fair trial and denied him due process of law.

For purposes of our discussion, we approach this evidentiary issue as though it had arisen at the first trial. The question is: does the disappearance of evidence that was subjected to scientific analysis preclude the admission of testimony concerning that evidence? In the limited circumstances of this case, we hold that it does not. It is clear that at no time prior to trial did defense counsel seek to exercise his right, under M.R.Crim.P. 16, to examine the projectiles in the state's custody. It appears, moreover, that access to the evidence became an element of defense strategy only after counsel learned that the projectiles were missing. Under these circumstances, we see no reason to preclude the admission of testimony regarding physical objects simply because they cannot be produced. That testimony, concerning a scientific appraisal of the caliber of bullets submitted for analysis, was subject to defense cross-examination regarding the methodology employed, the level of training of the expert, and the reliability of test results obtained. No shifting of the burden of proof from the state to the defendant took place, nor was the jury's freedom to weigh

---

1. For this reason, most of the cases cited by defendant on this issue are inapposite. We are not dealing with actual suppression of evidence by the state, *see Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), or deliberate destruction of evidence, *see Stipp v. State*, 371 So.2d 712, 713–14 (Fla.Dist.Ct.App. 1979), or negligent or inadvertent tampering with evidence, *see People v. Harmes*, 38 Colo. App. 378, 560 P.2d 470, 472–73 (1976); *Trimble v. State*, 75 N.M. 183, 402 P.2d 162, 164–67 (1965). We are dealing, instead, with the negligent mishandling of evidence by the Clerk. Although any fault of the Clerk would operate against the state, we note that both prosecution and defense appear to be blameless.

the credibility of the witness in any way infringed. The lack of corroborating physical evidence could only affect the weight, and not the admissibility, of testimony by the state's expert. It did not, under these circumstances, violate the defendant's right to due process of law or deny him a fair trial.[2]

### III.

During the trial, testimony was given by one Dorothy White, who was present in the apartment on the night of the shooting. She testified that she had gone to bed shortly before the bathroom altercation took place and as she started to doze off she heard a "big bang" and she heard the little girl hollering "[m]y mommy, my mommy, she's dead, Mike [defendant Franklin] shot her." The "little girl" was Janelle Smith, the daughter of Linfield Franklin and Jeanette Smith. Defense counsel objected to the testimony on grounds of lack of foundation and hearsay, but the court let the testimony in as an excited utterance. On appeal, Franklin also argues that the prejudicial impact of this evidence outweighed its probative value, and therefore the evidence should have been excluded under M.R.Evid. 403.

We note, at the outset, that Rule 403 was not made the basis of an objection at trial. We therefore need consider this issue only under an "obvious error" standard. M.R.Evid. 103(d); M.R.Crim.P. 52(b). Rule 401 of the Maine Rules of Evidence states that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 403 provides that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The evaluation of relevance and the exclusion of otherwise relevant evidence are within the sound discretion of the presiding justice. *State v. Johnson*, 472 A.2d 1367, 1371 (Me.1984); *State v. Forbes*, 445 A.2d 8, 11 (Me.1982). The court's discretion under Rule 403 is quite broad, *see* Field & Murray, *Maine Evidence* § 403.1 at 59 (1976), and involves a balancing of the probative and prejudicial aspects of the evidence. *State v. Greenwald*, 454 A.2d 827, 829 (Me.1982); *State v. Morton*, 397 A.2d 171, 179 (Me.1979). After reviewing the record, we find that, while clearly damaging to Franklin's case, the exclamation by Janelle Smith was also extremely probative, and not so prejudicial as to produce the "manifest injustice" necessary for a finding of obvious error, *see State v. True*, 438 A.2d 460, 467 (Me.1981) (citing *State v. Baker*, 409 A.2d 216, 219 (Me.1979)).

Franklin urges that the prosecutor failed to lay an adequate foundation by demonstrating White's competence to testify as to Janelle Smith's statement. Rule 602 of the Maine Rules of Evidence requires that a witness have personal knowledge of the subject matter of her testimony. Such knowledge, however, need not have been obtained visually so long as it involved "something [s]he has perceived through [her] physical senses." Field & Murray, *Maine Evidence* § 602.1 at 129 (1976). "An opportunity to have observed and a belief that what [s]he says is the result of [her] observation" is sufficient foundation for the testimony. *Id.* White testified that she was present on the evening of November 19, 1981, that she witnessed the arguments between Franklin and Jeanette Smith, and that she heard a portion of the argument that took place in the bathroom, shortly before she began to doze off. She testified that she heard a

2. The defendant also complains that loss of the bullets infringed upon his right to a speedy trial. This claim is entirely without merit. The elapsed time between the Law Court's decision vacating the conviction in the first trial (August 3, 1983) and defendant's second trial (October 24–28, 1983) is "attributable to either the appellant's own actions or to circumstances beyond the control of the prosecution," *State v. Lewis*, 373 A.2d 603, 609 (Me.1977), and thus provides no independent ground for reversal.

"big bang" followed by the exclamations of Janelle Smith. This testimony, based expressly on her personal observations, satisfies the minimum foundational requirements under Rule 602.

■ The statement by Janelle Smith is clearly hearsay under M.R.Evid. 801(c), and therefore would ordinarily be excluded under Rule 802. Rule 803(2), however, provides that "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" constitutes an exception to the hearsay rule. In *State v. Walton*, 432 A.2d 1275 (Me.1981), we described three prerequisites for the admissibility of evidence under Rule 803(2). The presiding justice must find "(1) that a startling event occurred; (2) that the hearsay statement related to the startling event; and (3) that the hearsay statement was made while the declarant was under the stress of *excitement caused by that event*." 432 A.2d at 1277 (emphasis in original).

White's testimony that she heard a "big bang" issue from the bathroom where, shortly before, she had heard Franklin arguing with the decedent, satisfies the "startling event" element of the test. The statement made by Janelle Smith was clearly related to that event. Under the third element, the following colloquy between the prosecutor and Dorothy White is relevant:

Q. And, you heard [Jeanette Smith] go upstairs, could you determine, through hearing, where she went?

A. Yes.

Q. Where was that?

A. Into the bathroom.

Q. Was she still talking in the bathroom?

A. Yes.

Q. And, what else did you hear from Mrs. Smith?

A. I heard her little girl asking if she was all right.

Q. That's Janelle?

A. Yes.

Q. And from the sounds of the voices where did you determine that Janelle was?

A. In the bathroom with her.

Q. With her mother?

A. Yes.

Q. And, what else do you remember hearing?

A. That's when I started to doze off, then I heard a big bang, and I heard the little girl hollering, "My mommy, my mommy [objection by defense counsel] ... she's dead, Mike shot her."

In *Walton* we observed that "[t]he trustworthiness of an excited utterance ... is based upon the theory that the impact of the event produces an utterance that is 'spontaneous and unreflecting.'" 432 A.2d at 1277 (quoting *State v. Ellis*, 297 A.2d 91, 93–94 (Me.1972)). The case at bar is a classic case meeting the *Walton* criteria. White's testimony leading up to the hearsay remark provides ample evidence from which the court could infer that Janelle Smith was in a position to observe and react to the startling event which took place, and that her hearsay statement was, indeed, produced under the stress of excitement caused by that event. Any additional argument goes to the weight, and not the admissibility, of her statement.

### IV.

■ At trial, witness Karen Davis made a brief testimonial reference to the defendant's previous trial. She stated, with reference to some Cuban refugees who were friends of the defendant and present on the night of the shooting, that "I stayed with Piedra until last, shortly after the last trial and then I haven't had anymore contact with those Cubans." Admittedly for strategic reasons, defense counsel entered no objection to the remark when it was made. Instead, he moved for a mistrial after Davis completed her testimony. When the court denied his motion, defense counsel

declined the court's offer to give a curative instruction to the jury. Citing the recent New Hampshire case of *State v. Woodbury,* 469 A.2d 1302 (N.H.1983), Franklin now contends that he was "substantially prejudiced" by this remark. In *Woodbury,* the defendant was on trial for robbery, and a witness for the state referred to a previous armed robbery charge brought against the defendant. The New Hampshire Supreme Court reversed the conviction, noting that "[p]rejudice results when the testimony of a witness conveys to a jury the fact of a defendant's prior criminal offense." 469 A.2d at 1305. The testimony at bar, however, falls significantly short of "convey[ing] to a jury the fact of a defendant's prior criminal offense." The inadvertent, nonresponsive reference to "the last trial" was oblique, and several degrees removed from the remark in *Woodbury.*[3] Given the inconsequential nature of the testimonial reference and the trial judge's conclusion of the absence of prejudice, we see no error in the denial of the mistrial motion. *See State v. Libby,* 435 A.2d 1075, 1078–79 (Me.1981).

### V.

 Franklin also contends that the presiding justice impermissibly suggested in his jury instructions that the defendant had a burden of proof at trial or that the state had more evidence than it presented. In prefatory remarks, the court stated that "[p]robably no attorney that ever presented a case, ever presented a perfect case. And often times attorneys think, after the case is over, that perhaps it would have been helpful if they had done this or done that." Suffice it to say that it strains credulity to interpret this remark as implying any shifting of the burden of proof from the state to the defendant or as implying that the state had additional evidence. Moreover, the court, acceding to a request made by defense counsel, closed its instructions to the jury by reiterating that "[t]he defendant in

this case, as the defendant in any criminal case, is not under any obligation whatsoever to produce any evidence of any kind in a court of law." The error in the court's instructions, if any, was harmless.

We have carefully reviewed the entire record in this case and we find no grounds to disturb the defendant's conviction.

The entry is:

Judgment affirmed.

All concurring.

---

**3.** In *Woodbury,* the witness testified that "[t]he officer responded by stating that the defendant said 'I don't know why you're charging me with armed robbery. I've been that route before. I've been charged with armed robbery before.'" 469 A.2d at 1304.