## STATE of Maine
### v.
### Steve S. BARNIES.

Supreme Judicial Court of Maine.

Submitted on Briefs June 20, 1996.
Decided July 25, 1996.

---

* CLIFFORD and DANA, JJ., were not available to   participate.

Norman R. Croteau, District Attorney, Patricia Reynolds Regan, Assistant District Attorney, Auburn, for State.

E. James Burke, Bell & Burke, P.A., Lewiston, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, and RUDMAN, JJ.

ROBERTS, Justice.

Steve S. Barnies appeals from the judgment entered in the Superior Court (Androscoggin County, *Delahanty, J.*) affirming the judgment entered in the District Court (Lewiston, *Gorman, J.*) convicting him of assault, Class D, in violation of 17–A M.R.S.A. § 207 (1983 & Supp.1995). On appeal Barnies argues that the court erred in admitting, pursuant to M.R. Evid. 803(2), the testimony of a police officer regarding a conversation the officer had with the victim of Barnies's alleged assault. We agree, and vacate the judgment.

Officer Michael Lacombe of the Lewiston Police Department was the sole witness at the jury-waived trial.[1] His testimony may be summarized as follows. At approximately 10:50 P.M. on September 1, 1994, Officer Lacombe was dispatched to April Deschaine's apartment in response to a neighbor's call regarding a domestic disturbance. Lacombe was greeted at the door to the apartment by Deschaine, who was "visibly upset. She was crying ... and she had a hard time catching her breath, trying to talk, and you could tell she was very upset." Deschaine's left eye was swollen and red and she had an abrasion on her shin that was bleeding. Lacombe noticed that the apartment was a "mess," pictures were off the wall, the coffee table was tipped over, and various items were "strewn about." Lacombe asked Deschaine what had happened and why she was so upset. Over Barnies's hearsay objection, Lacombe was permitted to testify that Deschaine told him that her boyfriend, Barnies, had come home drunk after being out with friends and they got into an argument. She told Lacombe that Barnies was passed out in the bedroom and she wanted him to leave. Lacombe then asked Deschaine, "Did Steve [Barnies] assault you?" She did not respond. Lacombe testified alternatively that he either asked Deschaine again whether she had been assaulted or, after a period of silence on Deschaine's part, she volun-

---

1. Although subpoenaed to testify, the victim failed to appear. The record, however, does not disclose why the State opted to try Barnies rather than seek a continuance.

teered that whenever she and Barnies argued she was assaulted.[2] Deschaine then told Officer Lacombe that Barnies had put a lit cigarette to her eye and kicked her shin. She would not sign a statement.

At the close of his cross-examination of Lacombe, Barnies renewed his objection and moved to strike Lacombe's testimony. The court denied the objection and the motion to strike, and found Barnies guilty. The Superior Court affirmed the judgment of the District Court, and Barnies filed this appeal.

■■■ "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition" is admissible as an exception to the hearsay rule. M.R.Evid. 803(2). Before admitting hearsay testimony pursuant to the "excited utterance" exception, the trial court is required to find "(1) that a startling event occurred; (2) that the hearsay statement related to the startling event; and (3) that the hearsay statement was made while the declarant was under the stress of *excitement caused by that event.*" *State v. McLaughlin,* 642 A.2d 173, 175 (Me. 1994) (quoting *State v. Walton,* 432 A.2d 1275, 1277 (Me.1981)). The three required findings are preliminary questions for the trial court pursuant to M.R. Evid. 104. Field & Murray, MAINE EVIDENCE § 803.2, at 8–49 (3d ed.1994). The court's foundational findings are reviewed for clear error. *State v. Longley,* 483 A.2d 725, 728 (Me.1984); *see also State v. Lafrance,* 589 A.2d 43, 46 (Me. 1991) (finding error in court's admittance of statement as excited utterance when no competent evidence on one of trial court's presumed findings); *cf. State v. Caouette,* 462 A.2d 1171, 1175–76 (Me.1983) (in determining whether testimony given at a preliminary

hearing is admissible pursuant to M.R.Evid. 804(b)(1), certain factual predicates must be found by trial court, and "[u]nless those findings were clearly erroneous, it was within the discretion of the court to admit the . . . evidence").

■■■ "A statement given under the stress of anything other than the *excitement* caused by the startling event is not admissible." *State v. True,* 438 A.2d 460, 465 (Me. 1981). The stress of conscience, guilt, or fear is not to be equated with the stress of excitement. *State v. Lafrance,* 589 A.2d at 45 (quoting *State v. Walton,* 432 A.2d at 1277). "The trustworthiness of an excited utterance rests upon the assumption that the startling event produces a statement that is 'spontaneous and unreflecting' and made 'before there has been time to contrive and misrepresent.'" *State v. Lafrance,* 589 A.2d at 45 (quoting *State v. Ellis,* 297 A.2d 91, 93–94 (Me.1972)).

Barnies does not dispute that there is competent evidence in the record of both a startling event and a relation between the event and Deschaine's statements to Officer Lacombe.[3] He contends, however, that the only unsolicited utterances made by Deschaine in her initial excited state—and therefore the only statements admissible as excited utterances—were her statements that there had been an argument and she wanted Barnies to leave. Barnies argues that Deschaine's statements to Lacombe about the assault were made only after Lacombe asked pointed and direct questions about "assault," and the statements therefore do not exhibit the spontaneity required by the rule.

■■■ There "is no bright-line time limit for the requisite state of excitement." *State v. McLaughlin,* 642 A.2d at 175. There is no

---

**2.** Officer Lacombe testified:

> I questioned her once after the second time.[sic] She was very apprehensive, and I could tell something had happened, and she wasn't telling me the whole story. So, I asked her again to tell me what happened, and then she—she proceeded to tell me the whole story.

He later testified:

> I asked her once, "Did Steve assault you?" . . . And she was very apprehensive, didn't answer anything, . . . and then she came back, without further questioning, stating that whenever she gets into an argument with Steve, she

gets assaulted. Then I went further and said, "Why don't you tell me exactly what happened here today so we can get this figured out?"

**3.** The fact that Deschaine's statements to Lacombe regarding the assault are hearsay is irrelevant to the trial court's determination whether a startling event occurred and the statement's relation to the event because the trial court "is not bound by the rules of evidence" in making preliminary admissibility determinations. M.R.Evid. 104(a).

time limit because, although the period of time between an event and a statement is an important factor, "lack of capacity to fabricate rather than lack of time to fabricate is the justification for [the] rule.... The crucial point is that the court must be able to find that the declarant's state at the time of making the declaration ruled out the possibility of conscious reflection." 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S EVIDENCE ¶ 803(2)[01], at 803–105 (1994). We recognized this distinction more than twenty years ago.

> [U]nder certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as ... expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.

*State v. Ellis,* 297 A.2d at 93 (citation omitted).

In *McLaughlin,* a police officer's testimony about what a victim told him ten minutes after a domestic assault was admitted as within the excited utterance exception. *State v. McLaughlin,* 642 A.2d at 175. Although we could not determine, based on the facts in that case, that the court's findings were clearly erroneous, we stated that even if it were error the error was harmless because the victim's testimony regarding the assault corroborated that of the officer. In the instant case, Lacombe was the only person who testified, and the record offers significantly more evidence from which to determine whether Deschaine's statements were made without reflection and while under the stress of excitement caused by the assault.

■ In contrast to Deschaine's initial statements to Lacombe, her later statements

concerning the assault required more probing by Lacombe. In *People v. Brown,* 70 N.Y.2d 513, 522 N.Y.S.2d 837, 517 N.E.2d 515 (1987), the New York Court of Appeals considered the question of the effect of a police officer's direct inquiry on a statement's reliability. The court stated that "the nature, extent and purpose of the questions and the identity, position and manner of the questioner are but additional factors to be considered in determining whether the statements were made under the continuing influence of the stress and excitement generated by the initial event." *Id.,* 522 N.Y.S.2d at 842, 517 N.E.2d at 519–20. We agree that the fact that Deschaine's statement was in response to a police officer's question is not alone determinative of admissibility, but rather is another factor to be considered in the analysis. *See State v. Hafford,* 410 A.2d 219, 220 (Me.1980) (declarant's statement in response to neighbor's inquiry properly admitted as excited utterance where testimony showed declarant went to neighbors within minutes of robbery, declarant was "shaken up," and his hand was bleeding and wrapped in a towel); *see also People v. Lawler,* 142 Ill.2d 548, 154 Ill.Dec. 674, 679, 568 N.E.2d 895, 900 (1991) (although simple question such as "what happened" will not destroy spontaneity, persistent questioning will).

Lacombe testified that he "questioned [Deschaine] once *after* the second time," and that she "was very apprehensive," he "could tell something had happened, and she wasn't telling [him] the whole story." Lacombe also testified that after Deschaine told him that she and Barnies had had an argument, he asked her whether Steve assaulted her. Deschaine was "apprehensive, she didn't answer anything, ... and then she came back" and said that whenever she and Barnies argue, he assaults her. Moreover, Lacombe did not simply repeat his original inquiry "what happened," but instead specifically asked, "Did Steve assault you?" We would not characterize Lacombe's questioning of Deschaine as persistent and do not suggest that the question "Did Steve assault you" makes the response *per se* inadmissible. We are, however, particularly troubled by her

apprehension, lack of immediate response, and obvious reflection.

Although we are aware of the State's predicament in prosecuting some cases of domestic violence, we are also mindful that the excited utterance exception is a narrow one, "fraught with danger to our conception of a fair trial." *State v. Walton,* 432 A.2d at 1277–78. "Sound public policy requires that the established rule as to this class of evidence, should be strictly adhered to and not extended." *Id.* at 1278 (quoting *State v. Maddox,* 92 Me. 348, 354, 42 A. 788 (1898)). When Deschaine made the statement that Barnies assaulted her, she had already told Lacombe that she was afraid and wanted Barnies out of the apartment. Deschaine's hesitation in responding to Lacombe's question simply allowed too much time for her to reflect and consider. In *State v. Leone,* 581 A.2d 394, 399 (Me.1990), we affirmed the trial court's exclusion of the defendant's statements made several minutes after the startling event where the record disclosed "abundant reflective power." This case similarly presents too many indicia of conscious reflection on the part of the declarant.

The entry is:

Judgment vacated.

All concurring.