STATE of Maine

v.

Robert C. BOUTILIER.

Supreme Judicial Court of Maine.

Argued Jan. 14, 1981.
Decided March 4, 1981.

Janet Mills, Dist. Atty., John C. Sheldon (orally), Asst. Dist. Atty., Farmington, for plaintiff.

Cloutier, Joyce, Dumas & David, Edward S. David, Livermore Falls, (orally) for defendant.

Before McKUSICK, C. J., and WERNICK, ROBERTS and CARTER, JJ.

WERNICK, Justice.

Found guilty by a jury of Manslaughter, committed in violation of 17–A M.R.S.A. § 203(1)(A), the defendant Robert C. Boutilier has appealed to this Court from the judgment of conviction entered in the Superior Court (Franklin County).

We sustain the appeal and set aside the judgment of conviction.

On May 17, 1979, the defendant was operating a 1965 Chrysler proceeding south on Route # 4 in Strong toward Farmington. Two friends, Rod Savage and Emery Scribner, were passengers. In the trunk of the vehicle was a five-gallon metal can of gasoline. At approximately 11:15 p. m., the weather being clear and the road dry, defendant failed to negotiate an "S" curve, and the car went off the left-hand side of the road. Striking a guard rail that tore open its left rear, the car continued down an embankment through trees and brush, and it ultimately came to rest in a damp area next to a shallow river.

Defendant escaped from the vehicle almost immediately after it had come to a stop, and before its trunk exploded. The explosion was caused solely by the can of gasoline in the trunk; the car's gas tank did not burn at all. Rod Savage, who had been sitting on the passenger side of the front seat, also managed to escape from the vehicle. Emery Scribner, the other passenger, was pulled by the defendant Boutilier from the flaming back seat.

Savage was only slightly burned. Defendant suffered a scalp laceration and severe burns on his forearms and hands. Scribner, however, sustained second and third degree burns over 80% of his body, and he died the day after the crash.

The indictment against defendant charged that he had "recklessly" or "with criminal negligence" caused Scribner's death as a result of operating a motor vehicle "at an extremely high and dangerous rate of speed." [1]

At trial, defendant testified to having limited memory of the events leading to the crash. Because Savage had been asleep, he could give no account of what had happened before the car left the road, or, in particular, how fast defendant had been driving. Other testimony, however, revealed that as the car had left the road, it had left tire marks. After a voir dire the presiding justice, over objection by defendant, permitted State Trooper Richard Joseph to testify as an expert qualified to reconstruct the speed of vehicles from tire marks. Joseph testified that he could, and did, identify the marks left by defendant's car as a "scuff mark", the kind of mark a vehicle leaves when it has reached "critical speed." "Critical speed" is the theoretical maximum speed at which a car in the radius of a curve can travel through the curve without losing frictional contact with, and sliding off, the road. From algebraic calculations made from measurements of the road, in combination with the tire "scuff mark", Trooper Joseph stated his opinion, as a qualified expert, that defendant's car was travelling between 108 and 118 m. p. h. when it left the road. The speed limit was 55 m. p. h.

Trooper Joseph's testimony was the only evidence of the speed, or range of speed, at which defendant's vehicle had been driven.

---

1. The text of the indictment, as pertinent, read:

"THE GRAND JURY CHARGES: That on or about the 17th day of May, 1979, in the town of Strong, County of Franklin, State of Maine, the above-named defendant, ROBERT C. BOUTILIER, did recklessly, or with criminal negligence, cause the death of another human being, namely, Emery Scribner III, whose death occurred as the result of ROB- ERT BOUTILIER'S reckless or criminally negligent operation of a motor vehicle, namely, an automobile. Specifically, ROBERT C. BOUTILIER drove the said vehicle, in which Emery Scribner III was a passenger, along Route # 4 at an extremely high and dangerous rate of speed . . . and as a result crashed off the road, causing fatal injuries to Emery Scribner III."

Defendant raises two points on appeal: (1) that the indictment, as a charge of the crime of manslaughter, was legally inadequate; and (2) the presiding justice committed error seriously prejudicial to defendant in permitting Trooper Joseph to testify as a qualified expert regarding a precise range of speed at which defendant was operating when his car missed the curve and left the highway.

■ We decide that the indictment, which tracked the language of 17-A M.R.S.A. § 203(1)(A) and included an allegation that the defendant had operated his car "at an extremely high and dangerous rate of speed", amply satisfied the pleading requirements of Rule 7(c) M.R.Crim.P. ("The indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."); see State v. Tracy, Me., 400 A.2d 758, 759 (1979); State v. Holt, Me., 391 A.2d 822, 824 (1978); State v. Harriman, Me., 259 A.2d 752, 754 (1969). As mandated by Article I, section 6 of the Maine Constitution, the indictment alleged every element of the offense charged. State v. Thibodeau, Me., 317 A.2d 172, 179 (1974). The defendant's alleged conduct and culpable state of mind were adequately described, and defendant was thus given notice of what he must answer to and was provided with the basis for a future plea of former jeopardy. See State v. St. Clair, Me., 418 A.2d 184, 189 (1980); State v. Sampson, Me., 387 A.2d 213, 216 (1978).

Turning to the second point on appeal, we conclude that the presiding justice committed error in allowing Trooper Joseph to testify, as a qualified expert, regarding a precise range of speed at which defendant's vehicle was being operated.

Anticipating that the State would attempt to elicit such testimony, defendant had moved before trial to suppress it. A ruling on this motion was deferred to trial. After a voir dire out of the hearing of the jury, the presiding justice allowed Joseph to testify as a qualified expert in determining speed from tire marks.

Rule 702, M.R.Evid. permits testimony by "a witness qualified as an expert by knowledge, skill, experience, training, or education" on matters where "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." When a party offers the testimony of a witness as "expert", the presiding justice must make two preliminary determinations: first, whether the subject matter calls for expert testimony; second, whether the witness is qualified to give the opinion sought. M.R.Evid. 702, 104(a); R. Field & P. Murray, Maine Evidence § 702.1 (1976). The proffered testimony is also subject to the general relevance requirements of Rules 401 and 402 and, even if relevant, may be excluded if its probative value would be outweighed by the countervailing considerations of Rule 403. See State v. Flick, Me., 425 A.2d 167 (1981); State v. Williams, Me., 388 A.2d 500, 503 (1978); see also R. Field & P. Murray, Maine Evidence, supra, at §§ 704.1, 403.1.

The general subject of the admissibility of expert testimony regarding automobile accident reconstruction is encompassed under M.R.Evid. 702; see also Parker v. Hohman, Me., 250 A.2d 698, 702 (1969). Trooper Joseph, 30 years of age, a high school graduate with the benefit of one year's attendance at a college, had been given three weeks of special training in techniques of accident investigation, some of which included techniques of determining on the basis of tire marks the original speed at which a motor vehicle had been travelling.

It is evident to us from the voir dire in this case that Trooper Joseph's training and experience leave a great deal to be desired. Yet, we would hesitate to overturn the ruling of the presiding justice, which involves a large measure of discretion, solely for that reason.

The voir dire further discloses, however, that Trooper Joseph arrived at his opinion of a precise range of speed at which defendant's car had been travelling by using a formula developed to reveal the theoretical

*speed tolerance* of a curved roadway, not to establish the *actual speed* of a car which had failed to negotiate a curve. Joseph's own training manual specifies the use of another method, one that figures in the center of mass of the vehicle, for deriving original speed. Voir dire by defense counsel revealed that Joseph "disagreed" with the teaching of his own manual:

"Q. (By defense counsel) What is this a reprint of?

"A. (By Trooper Joseph) Part of the reconstruction manual by Mike Lofgren of the Minnesota State Patrol.

"Q. That you used? [in the training course]

"A. Yes.

"Q. Okay. This formula is the derivation of the critical speed formula, right?

"A. Yes, it is.

"Q. This does say that you must use the center of mass. It says that, doesn't it?

"A. That's what it says.

"Q. You have an opinion that you don't need to, is that correct?

"A. No, sir, you don't."

Although Trooper Joseph also testified that he had "checked" his calculations using the method mandated by his own manual, he later explained that this "check" involved imprecise measurements. The only assurance Joseph gave the court that his method of computing speed was reliable was his testimony that a training class of troopers had run experiments verifying the accuracy of such speed computations. Joseph cited no treatise or authority in the accident reconstruction field that approved the use of the "theoretical speed tolerance" formula to compute the original speed of a car from marks left by it on a paved surface. Thus, in the present case the voir dire did not show that the methodology employed by Trooper Joseph had sufficient scientific basis, or recognition, to vouch for its reliability.

■ When determining the admissibility of proffered expert opinion testimony in terms of its relevance and helpfulness to the jury, the presiding justice should evaluate whether what is claimed as "scientific" is really so, and in this regard one important (if not controlling) consideration is whether the matters involved have been generally accepted or conform to a generally accepted scientific theory. *See State v. Williams, supra,* at 504.

■ Here, in light of the doubt cast on Trooper Joseph's methodology by defense counsel and of Joseph's disagreement with his own training manual, it was error for the presiding justice to allow him to give opinion testimony as a qualified expert regarding a precise range of speed at which defendant's car was travelling. *Cf. State v. Mitchell,* Me., 390 A.2d 495, 501 (1978); *State v. Williams, supra,* 388 A.2d at 504–505; *State v. Ifill,* Me., 349 A.2d 176, 183 (1975). Absent from the record of the voir dire is *any* evidence tending to show the reliability of Joseph's methodology, so that his testimony could be regarded as relevant, hence helpful to the fact-finder, within the meaning of Rules 401, 402 and 702.

■ Our conclusion that the presiding justice should have ruled the Joseph "expert opinion" testimony to be inadmissible should not be read to undercut what we said in *State v. Williams, supra :*

"the fundamental philosophy of our Rules of Evidence, as revealed more particularly in Rules 402 and 702, generally . . . [favors] the *admissibility* of expert testimony whenever it is relevant and can be of assistance to the trier of fact." 388 A.2d at 503 (emphasis in original).

We do not intimate that "general scientific acceptance" is a *sine qua non* of a proposed method of determining facts; what we do regard as requisite to the admissibility of proffered expert testimony is a showing of *sufficient reliability* to satisfy the evidentiary requirements of relevance and helpfulness, and of avoidance of prejudice to parity or confusion of the fact-finder. M.R.Evid. 402, 702 and 403.

In the instant case, Trooper Joseph alone avowed the reliability of his particular

methodology. As based on no better than the "science" Trooper Joseph asserted, his testimony must be held to have failed to satisfy preconditions of the admissibility of expert opinion evidence.

The entry shall be:

Appeal sustained; judgment of conviction set aside; case remanded to the Superior Court.

All concurring.