**STATE of Maine**

v.

**Gordon LONGLEY.**

Supreme Judicial Court of Maine.

Argued Sept. 17, 1984.

Decided Nov. 1, 1984.

Gene Libby, Dist. Atty., Michael Saucier, Pamela Knowles Lawrason, Asst. Dist. Attys., Brett Dwight Baber, Law Student (orally), Alfred, for plaintiff.

Edward J. Titcomb (orally), Titcomb, Fenderson & Knight, Flaherty & Flaherty, Kevin S. Flaherty, Sanford, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ.

McKUSICK, Chief Justice.

After a jury-waived trial in the Superior Court (York County), defendant Gordon Longley was convicted of manslaughter, Class C, 17–A M.R.S.A. § 203(1)(A) (1983); of leaving the scene of a personal injury accident, 29 M.R.S.A. § 893 (1978); and of operating after suspension, 29 M.R.S.A. § 2184 (Supp.1983–1984). Those convictions arose out of an incident in which Police Officer Robert Gallant was struck by an automobile and killed as he stood on the shoulder of Route 9 in Berwick. On his appeal from those convictions, Longley alleges that the Superior Court justice sitting without a jury committed reversible error in five respects. We find no merit in Longley's first three points on appeal, all involving evidentiary rulings. We do, however, agree with Longley that the trial justice in announcing his finding of Longley's guilt of manslaughter made an erroneous statement that "driving under the influence is both reckless and criminally negligent driving, *per se.*" Since the justice may have applied an erroneous standard of law, we vacate the manslaughter conviction and remand for the justice to reexamine the whole evidence on that count without applying any *per se* rule. Because of the remand, we do not consider defendant's fifth contention that there was insufficient evidence to convict him on the manslaughter count. If defendant appeals the judg-

ment entered on the manslaughter count on remand, his contention of insufficiency of the evidence will then be ripe for this court's consideration. We, however, do here review the record on the charges of leaving the scene and of operating after suspension, and we conclude that the trial justice had ample evidence before him to support those convictions. Therefore, we affirm those latter convictions.

### Facts

At approximately 9:00 p.m. on September 11, 1982, Officer Robert Gallant of the Berwick Police Department stopped an automobile on Route 9 to investigate an argument between two of its passengers, Elizabeth Reid and her brother, Roger Turgeon. The vehicle pulled off the road into the driveway of the Dyer residence on the northwesterly side of Route 9. As Officer Gallant spoke with Turgeon, Reid walked out of the driveway onto the highway, with the intention of hitchhiking to her home in Berwick. Recognizing the danger she was in, Gallant went to where Reid was standing in an attempt to convince her to return to the Dyer driveway. Officer Gallant succeeded in getting Reid to move three feet from the edge of the pavement onto the gravel shoulder. Gallant stood between Reid and the paved roadway.

During the same period of time, defendant Longley was driving his AMC Hornet southwest on Route 9 towards Berwick. The trial court specifically found that because of the amount of beer and marijuana Longley had consumed that day, he was operating his vehicle while under the influence of alcohol and drugs. The record fully supports that finding. At 9:10 p.m. Longley's vehicle drove past the Dyer home and struck Officer Gallant, causing him fatal injuries. Elizabeth Reid was also injured. Longley pulled his car to the side of the highway some 600 feet beyond the scene of the accident. He and his two passengers got out of the Hornet and began to walk toward the Dyer home. Jack Henry, one of Longley's passengers, convinced the others that a thrown rock was responsible for the thump they had heard and that they should drive on. They returned to the car and did so.

The next day, after hearing about the officer's death, defendant Longley sought out Chief Perron of the Somersworth, New Hampshire, police department and volunteered information concerning his involvement in the accident. Longley then turned himself in to the Berwick police.

### I. *Excited Utterance*

Over defendant's objections, the trial justice permitted four witnesses to testify about statements made by Elizabeth Reid at the scene soon after the accident. Reid said: "[T]he son of a bitch came right off the road and hit us" and "a car hit us, it's like they did it on purpose." On appeal, defendant Longley contends that the justice erred in ruling that Reid's statements came within the excited utterance exception to the hearsay rule, M.R.Evid. 803(2). We reject defendant's contention.

The trial court must find three foundational facts for the admission of a hearsay statement as an excited utterance: (1) that a startling event occurred, (2) that the hearsay statement related to the startling event, and (3) that the hearsay statement was made while the declarant was under the stress of excitement caused by that event. *State v. Walton*, 432 A.2d 1275, 1277 (Me.1981), interpreting M.R. Evid. 803(2). We review the trial justice's foundational finding by the "clearly erroneous" test. *State v. Hafford*, 410 A.2d 219, 220 (Me.1980).

Prior to the fatal accident Reid had experienced a difficult day. She had attended an afternoon wedding where she consumed seven or eight beers, and she drank an additional two or three beers later in the day. In the minutes preceding the accident she was arguing with her brother and was so upset that she attempted to hitchhike home. During her brief conversation with Officer Gallant, Reid began to cry. Given this "stressful" situation, defendant on ap-

peal contends that although the first two prongs of the *Walton* test are met, Reid's statements, made within one to ten minutes of when the auto struck Officer Gallant, were not made under the stress of excitement caused by *that event.*

■ Defendant's contention lacks merit. The stress felt by the declarant need not be solely the product of a single event. "The trustworthiness of an excited utterance ... is based upon the theory that the impact of the event produces an utterance that is 'spontaneous and unreflecting'." *State v. Walton,* 432 A.2d at 1277 (quoting *State v. Ellis,* 297 A.2d 91, 93–94 (Me.1972)).

■ Although Elizabeth Reid had consumed a significant amount of beer on September 11, 1982, and had been arguing with her brother, whatever stress she had suffered earlier that day was dwarfed by the events after 9:00 p.m. As she stood only a foot or two from Officer Gallant, a vehicle traveling at least 40 m.p.h. headed toward the pair. Reid saw the lights of the approaching auto. She saw the vehicle strike and kill Gallant. Reid was herself hit, either by the car or by Gallant's flying body. She received serious bruises on her leg, and her nose was broken in six places. Reid testified, and the officers to whom she made the statements agreed, that after the accident she was "hysterical."

It was not clearly erroneous for the trial justice to conclude that Reid's statements were spontaneous and unreflecting and that they came within the excited utterances exception to the hearsay rule.

## II. *Defendant's Statements Made in Absence of Miranda Warnings*

At trial defendant's counsel made an ongoing objection to the testimony of Chief Ronald Perron of the Somersworth, New Hampshire, police department regarding a conversation between Chief Perron and defendant Longley on the morning after the accident. Longley now claims that the conversation is inadmissible because Chief Perron had not first read him the *Miranda* warnings. At trial Chief Perron testified about the conversation as follows:

When he approached me [at a softball game] he said, "Could I see you in private for a minute?"

I said "sure." We walked up towards the tennis courts which is about 50 yards away from where I was seated and I said, "What's the problem?"

And he said, "I'd like to talk to you about the incident that happened last night over in Berwick involving the police officer."

I said, "What about it?"

He said, "I think I may have been involved in that."

I said, "What do you think?"

He said, "We had been partying that night, I was feeling pretty good."

I said, "What happened?"

He said, "I was out on Route 9 and I drove by where I saw some people on the side of the road." He said, "And we felt an impact on the car and I drove down the road a little ways and I stopped. I looked back to see if there was anything going on, if anybody was going to come after, and nobody came so I left."

I said, "What do you want to do about that now?"

He said, "I want to do the right thing, whatever is the right thing to do."

I said, "The right thing to do is go to Berwick police and tell them the whole story."

He said, "Okay. That's what I want to do."

I said, "Do you have a car?"

He said, "no" and I said, "Would you like me to take you down?

He said, "yes." I explained to him he didn't have to go if he [didn't want] to, if he didn't I would probably have to arrest him.

He said, "No, I want to go do the right thing."

■ The warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), must be given only

when police engage in *custodial interrogation.* The State has the burden of proving by a preponderance that the *Miranda* warnings were not required, *State v. Philbrick,* 436 A.2d 844, 850 (Me.1981); but the trial court's ruling will be upheld if the record "provides rational support for [its] determination." *State v. Bleyl,* 435 A.2d 1349, 1358 (Me.1981). In the case at bar, the trial justice had ample support for his finding that Longley, when he made his statements to the Somersworth police chief, was subjected to neither police custody nor police interrogation. Therefore, *Miranda* did not apply.

"A person is in custody for the purposes of *Miranda* only when he is deprived of his freedom in some significant way, or would be led, as a reasonable person, to believe he was not free to leave the presence of the police." *State v. Bleyl,* 435 A.2d at 1358. At the time Longley voluntarily initiated the conversation in a public park, he was not a suspect of police investigation, nor was he restrained in a police-dominated atmosphere. *See id.; see also State v. Cochran,* 425 A.2d 999, 1002 (Me. 1981) (court can consider absence of police coercion, the defendant's cooperation, who initiated the contact, intent of the parties involved, and probable cause to arrest). Chief Perron did not mention the possibility of restraint until Longley had told the story of the collision.

Interrogations must be distinguished from "general investigations." *State v. Philbrick,* 436 A.2d at 849. Evidence from the latter is admissible in the absence of *Miranda* warnings and include "neutral impersonal requests for information" and "follow-up questions ... for the purpose of clarifying [an] ambiguous situation." *Id.* at 849. The questions posed by Chief Perron in this case were neutral requests for information and attempts to clarify ambiguous responses: "What about it?"; "What do you think?"; "What happened? "; and "What do you want to do about that now?" do not constitute a police interrogation as defendant claims. The trial justice was warranted in concluding that Chief Perron did not engage in interrogation of Longley in a *Miranda* sense. The trial court did not err in allowing testimony about Longley's statements.

### III. *Accident Reconstruction Testimony*

Defendant argues that the Superior Court justice committed prejudicial error in allowing State Police Trooper Gary Phillips to testify as an expert regarding the location of the collision between Longley's automobile and Officer Gallant. Longley asserts first, that Phillips did not possess the necessary qualifications to testify as an expert, and second, that Phillips impermissibly based his opinion on surmise and conjecture.

M.R.Evid. 702 states that expert witnesses who are qualified "by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." Allowing expert testimony is within the discretion of the trial justice. *State v. Boutilier,* 426 A.2d 876, 878 (Me.1981).

Although Trooper Phillips' formal training in accident reconstruction was limited to three weeks, a period this court described in *State v. Boutilier* as "leaving a great deal to be desired," *id.,* Phillips possesses adequate qualifications under the various criteria of Rule 702 to testify as an expert in this case. In addition to his specialized training, he attended a 30-hour course in basic accident investigation. He has taught in accident reconstruction programs, has reconstructed over 100 accidents himself and assisted in reconstructing 700–800 others (including 100 vehicle-pedestrian accidents), has qualified as an expert in other Maine trials, and has consulted with other state police departments on the subject. The trial court's decision that Phillips was qualified to testify as an expert on accident reconstruction certainly fell within its reasonable discretion.

Second, defendant alleges that Trooper Phillips' opinion was impermissibly based

on surmise and conjecture. The allegation springs from the language of our opinion in *Parker v. Hohman*, 250 A.2d 698, 702 (Me. 1969): "The opinion of the expert, however, must be based upon facts established by the evidence in the case to which sound scientific principles are applied.... The expert's opinion may not be based upon surmise or conjecture." Defendant bases his allegation on the fact that Phillips could not provide exact locations of the final resting place of Reid or Officer Gallant's flashlight. In addition, he alleges fault in Phillips' assumptions that Gallant was stationary, that the vehicle was moving in an upward direction at the point of impact, that the path of travel of Officer Gallant's handcuff key was caused by Longley's car, and that any tracks left in the shoulder of the road by Longley's auto had been obliterated by the people at the scene directly after the accident.

 An expert witness who reconstructs an accident from available data cannot be expected to testify to the exact events that occurred during an accident. We do not require that an expert testify with absolute certainty as to the validity of his assumptions and conclusions. *See State v. Atkinson*, 458 A.2d 1200, 1204–05 (Me.1983); *State v. Woodbury*, 403 A.2d 1166, 1170 (Me.1979). "What we regard as requisite to the admissibility of proffered expert testimony is a showing of *sufficient reliability* to satisfy the evidentiary requirements of relevance and helpfulness, and of avoidance of prejudice to parity [sic] or confusion of the fact-finder." *State v. Boutilier*, 426 A.2d at 879 (emphasis in original) (discussing expert testimony based upon an allegedly scientific theory). Any lack of certainty by the expert affects the weight accorded his testimony, not its admissibility. *State v. Atkinson*, 458 A.2d at 1205; *State v. Bridges*, 413 A.2d 937, 942 (Me.1980).

 In this case, Trooper Phillips conducted a thorough investigation of the accident scene, attended the autopsy of Officer Gallant's body, examined the automobile involved at length, and conducted on-site experiments using Longley's AMC Hornet. None of the other witnesses contradicted the assumptions made by Phillips. All of the information compiled from those sources was considered by Phillips and used by him in reaching his conclusion.

Trooper Phillips had the expert qualifications necessary to assist the court by his opinion on the location of the accident. Obviously, since he was not a witness to the collision, his conclusions would be based on the logical inferences he drew from his investigation. Phillips conducted a complete and careful investigation, analyzed the available data, and formed an opinion to which he testified at trial. Any doubt that the defense could cast upon Phillips' qualifications or testimony go to weight, not to admissibility. It was not an abuse of discretion for the trial justice to admit the expert testimony of Phillips.

IV. *Driving Under the Influence as Recklessness or Criminal Negligence Per Se.*

At the conclusion of four days of jury-waived trial, the Superior Court justice took the case under advisement and the next morning delivered his decision. After reciting his findings of fact, he stated his conclusions of law. His first conclusion was: "[D]riving under the influence is both reckless and criminally negligent driving, *per se.*" Defendant contends that applying a *per se* rule to determine a culpable state of mind would be erroneous.

 We appreciate that the words of the trial justice's conclusion are susceptible to several interpretations, not all of which would require vacating the judgment in this case. The justice may have meant that the evidence he had heard proved that defendant's behavior (which clearly constituted operating under the influence) had been reckless and criminally negligent. Such an interpretation of the justice's statement is consistent with the settled Maine law that operating under the influence "is relevant evidence which the factfinder may consider

in determining whether the operator of a motor vehicle is guilty of criminal negligence." *State v. Carter*, 443 A.2d 958, 961 (Me.1982). *See also State v. Rhoades*, 380 A.2d 1023, 1026 (Me.1977). However, the *per se* rule interpretation of the justice's comment is at least as likely. Since we cannot be sure, defendant is entitled to a remand so that the trial justice may, on the existing record, make fresh findings of fact. In making his redetermination of innocence or guilt, the justice will not be restricted by any legal rule that operating under the influence automatically constitutes reckless or criminally negligent conduct as defined by our Maine Criminal Code.

▇▇▇▇ To be guilty of manslaughter a person must be proven beyond a reasonable doubt to have "[r]ecklessly, or with criminal negligence, cause[d] the death of another human being." 17–A M.R.S.A. § 203(1)(A). The terms "recklessly" and, alternatively, "with criminal negligence" are used by the code to identify the defendant's culpable mental state that the State must prove as a necessary element of the crime of manslaughter. Both terms "involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation." *Id.*, § 35(3) (definition of "recklessly"); *id.*, § 35(4) (definition of "criminal negligence"). The criminal code calls for an individualized determination by the factfinder in each case whether the State has sustained its burden of proof as to the defendant's mental state. *See* 17–A M.R.S.A. § 34 (1983).

▇▇▇▇ The conditions that make a driver guilty of operating under the influence in violation of 29 M.R.S.A. § 1312–B (Supp.1983–1984) are defined quite differently from the criminal code's definitions of "recklessly" and "with criminal negligence." A person is guilty of the Class D crime of "operating under the influence" if his mental or physical faculties are impaired "however slightly," i.e., "to any extent." *See State v. Bean*, 430 A.2d 1109,

1110–11 (Me.1981). No culpable state of mind is required to establish the offense of operating under the influence of intoxicating liquor or drugs. Accordingly, a death caused by one operating a motor vehicle while under the influence is not *ipso facto* the result of recklessness or criminal negligence as these culpable states of mind are defined in the criminal code. The justice's statement that driving under the influence is *per se* reckless and criminally negligent operation of a motor vehicle is subject to the interpretation that he failed to use the appropriate standard for determining the existence of the necessary culpable state of mind.

Accordingly, we remand to the trial justice for a new determination of defendant's innocence or guilt of the manslaughter charge based upon a review of the evidence previously presented at the jury-waived hearing. On any subsequent appeal from a conviction, defendant's present claim of insufficiency of the evidence will be open for this court's review.

The entry is:

Judgment of conviction on the manslaughter count vacated; remanded to the Superior Court for further proceedings on that count consistent with the opinion herein; and

Judgments of conviction for leaving the scene and operating after suspension affirmed.

All concurring.