STATE of Maine

v.

Scott HERBEST.

Supreme Judicial Court of Maine.

Argued Sept. 12, 1988.
Decided Dec. 6, 1988.

R. Christopher Almy, Dist. Atty., Philip C. Worden (orally), Asst. Dist. Atty., Dover–Foxcroft, for plaintiff.

Timothy Woodcock (orally), Mitchell & Stearns, Bangor, for defendant.

Before WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

CLIFFORD, Justice.

The defendant, Scott Herbest, appeals his conviction of manslaughter in the death of Michael Little, 17–A M.R.S.A. § 203 (1983), following a jury trial in Superior Court (Piscataquis County; *Brown, A.R.J.*). We affirm the judgment.

Michael Little, who the evidence showed was operating his motorcycle easterly on Route 16 in Sebec, was killed as the result of a broken neck. Little's motorcycle was rear-ended by an automobile in a high-velocity, severe-impact collision. The motorcycle and Herbest's 1977 AMC Gremlin were the two vehicles found at the scene. Just prior to the collision, the Gremlin was observed travelling east on Route 16 at high speeds and in a highly erratic manner. At the scene of the accident, an odor of alcohol emitted from Herbest, and from the Gremlin, which had several beer bottles and cans strewn about the inside. Herbest was taken to the Mayo Hospital in Dover–Foxcroft where he was overheard by a Maine State Police trooper making statements that he killed somebody on a motorcycle. After smelling alcohol on Herbest's breath, and observing his slurred, incoherent and rambling speech, glazed eyes and flushed complexion, the trooper concluded that Herbest was under the influence of alcohol and placed him under arrest. Samples of Herbest's blood were taken and showed a blood-alcohol level of 0.19 per cent by weight.

Herbest was charged with manslaughter, operating his motor vehicle in a reckless or criminally negligent manner and causing the death of Michael Little, 17–A M.R.S.A. § 203,[1] and operating a motor vehicle while under the influence of intoxicating liquor or while having 0.10 per cent or more by weight of alcohol in his blood, 29 M.R.S.A. § 1312–B (1978 & Supp.1987). Prior to trial, Herbest entered a plea of guilty to that portion of the charge under 29 M.R.S.A. § 1312–B charging operation while having 0.10 per cent or more by weight of alcohol in his blood without admitting that he was under the influence of alcohol. The plea was accepted by the trial court and the trial proceeded on the charge of manslaughter alone. After a three day trial, the jury

---

1. 17–A M.R.S.A. § 203 (1983) provides, in pertinent part:

    1. A person is guilty of manslaughter if he:

    A. Recklessly, or with criminal negligence, causes the death of another human being ...

found Herbest guilty of manslaughter. This appeal followed.

## I.

Herbest first contends that he was deprived of his constitutional right against self-incrimination when the trial justice denied his motion to suppress the statements he made in the emergency room of the hospital overheard by Trooper Daniel Ouellette. Ouellette testified that Herbest said, "I killed someone. I killed a guy on a motorcycle. I didn't mean to do it. I want to kill myself." Ouellette testified that these statements were made by Herbest as he was being wheeled on a gurney through the reception area of the hospital emergency room, that the statements were not made in response to any questions from Ouellette or anyone else, and could be overheard by everyone in the area. Ouellette did not interrogate Herbest.

■ Herbest was neither in custodial circumstances nor under interrogation, and there was no requirement that warnings required by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), be given to him in order that the statements be admissible against him. *State v. Price,* 406 A.2d 883, 885 (Me.1979). There was no evidence that any words were said or actions taken by Ouellette that were likely to elicit incriminating statements. *Rhode Island v. Innes,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980).

■ For the first time in his reply brief, Herbest points to the failure of the trial justice to make an express finding that Herbest's statements were voluntary and contends that the absence of that finding compels our conclusion that the statements should not have been admitted against him. Because the issue is raised for the first time on appeal, our review of it is on an obvious error basis. M.R.Crim.P. 52(b). We find no obvious error. Although the trial justice did not make an express finding that Herbest's statements were voluntary, *see* M.R.Crim.P. 41A(d),[2] the "voluntariness of the statements appears on the record with the unmistakable clarity required by *Sims v. Georgia,* [385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593 (1967)]." *State v. Snow,* 513 A.2d 274, 276 (Me.1986).

■ Herbest further claims that Trooper Ouellette's presence in the emergency room during which he overheard the statements made by Herbest, was an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution. This claim is without merit. Herbest had no reasonable expectation of privacy in a reception area of a hospital emergency room when he made statements that could be overheard by everyone in the area. *See State v. Bridges,* 513 A.2d 1365, 1367–68 (Me.1986) (citing *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967)). There was no error in the denial of Herbest's motion to suppress his statements.

## II.

Herbest next contends that the trial justice erred in denying his two motions for a mistrial, both based on what Herbest asserts to be prosecutorial misconduct. Because of the superior vantage point of the justice presiding at a trial, the refusal to grant a mistrial will be overturned only if there is an abuse of discretion on the part of the trial justice. *State v. Cormier,* 535 A.2d 913, 915 (Me.1987); *State v. Jones,* 523 A.2d 579, 581 (Me.1987).

■ During the trial, the prosecutor objected to the cross-examination of a State's witness. In stating his objection the prosecutor asserted that Herbest's attorney was trying to confuse the jury. The court cautioned the jury to disregard the prosecutor's improper comment and denied Herbest's motion for a mistrial. A prosecutor's duty to seek convictions is balanced

---

**2.** M.R.Crim.P. 41A(d) applies to motions to suppress evidence and provides, in pertinent part: ... If the motion is granted or denied, the court shall make findings of fact and conclusions of law either on the record or in writing.

by the duty to ensure a fair trial. *State v. Reilly*, 446 A.2d 1125, 1128 (Me.1982). A prosecutor's trial conduct will compel a new trial only when it involves improprieties that serve to create a manifest injustice to a defendant. *State v. Hebert*, 480 A.2d 742, 750–51 (Me.1984). The comment of the prosecutor here did not rise to that level. Moreover, the trial justice gave a cautionary instruction to the jury, and we assume that the jury heeded that instruction. *State v. Mason*, 528 A.2d 1259, 1260–61 (Me.1987). There was no abuse of discretion in the denial of the motion for a mistrial.

■ Herbest testified at trial that he had been drinking prior to the accident and during most of the weekend preceding the accident. During cross-examination, the prosecutor asked Herbest if he had lost his job earlier that week or if something had happened to upset him. Herbest objected on the grounds that the State's line of questioning was a "fishing expedition" and that he was prejudiced by the questions, both of which were answered in the negative by Herbest. Although it may be improper to ask questions of a witness for which there is no basis, *see Hebert*, 480 A.2d at 749 n. 12; R. Field & P. Murray, *Maine Evidence* § 611.4, at 239 (2d ed. 1987), the prosecutor in this case represented that he had knowledge that some traumatic event had recently happened to Herbest, and that he believed it to be the loss of a job. In the absence of prosecutorial bad faith, not found by the trial justice here, or circumstances exceptionally prejudicial to Herbest, again, not present here, the trial justice did not abuse his discretion in refusing to grant a mistrial. *Jones*, 523 A.2d at 581;

*State v. Hilton*, 431 A.2d 1296, 1302 (Me. 1981).

### III.

■ Herbest next argues that it was an abuse of discretion for the trial justice after a *voir dire* examination to allow Trooper Brian Theriault of the Maine State Police to testify as an expert witness in accident reconstruction. Theriault examined the scene of the accident and observed a single-wheel skid mark, gouge marks and "critical speed" scuff marks on the surface of Route 16. The skid mark, a gradually darkening black line, began in the west-bound lane of Route 16 and continued for over 165 feet downhill and across the center line into the east-bound lane to the point of impact. Theriault calculated the "drag factor" of the surface of Route 16,[3] and concluded that Herbest crested the hill just prior to the scene of the accident on the wrong side of the road, skidded for over 165 feet, crossing the center line into the east-bound lane and collided with the rear end of Little's east-bound motorcycle. Theriault estimated that Herbest was travelling at 94 miles per hour prior to the impact and 80 miles per hour at the point of impact.[4]

M.R.Evid. 702 provides:

*Testimony by Experts.* If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ The question whether a proffered witness possesses the requisite qualifica-

---

3. In order to calculate the "drag factor," Trooper Theriault performed a skid test at the accident site that required the use of the radar unit in his police cruiser. The trooper testified that he personally checked the calibration of the radar unit and that the unit had been sent to be checked for accuracy by a third party. Herbest's objection to Theriault's reliance, in part, on the drag factor calculated with the radar unit is unfounded. M.R.Evid. 703 allows an expert to base an opinion upon facts and data not otherwise admissible in evidence if they are of a type reasonably relied upon by experts in the

field. R. Field & P. Murray, *Maine Evidence* § 703.2, at 274–78 (2d ed. 1987). Dr. Charles W. Smith, a physicist whose credentials as an accident reconstructionist Herbest did not object to, testified that the radar data relied upon by Trooper Theriault was regularly relied upon by accident reconstruction experts.

4. Dr. Smith testified that he calculated Herbest's speed at 102 miles per hour at the beginning of the skid and 81 miles per hour at the point of impact.

tions to testify as an expert lies within the sound discretion of the trial justice. *State v. Longley,* 483 A.2d 725, 730 (Me.1984); Field & Murray, §§ 702.1, 702.2, at 262–270. Trooper Theriault is certified by the Maine State Police as an accident reconstructionist, and he is tested on an annual basis. He attended the Maine State Police Academy for a one-week course in advanced accident investigation and an intensive two week course in accident reconstruction that included field tests of skid marks produced under controlled conditions. He returns to the police academy each year for additional training in accident reconstruction. He testified that he had investigated about 100 accidents as an accident reconstructionist, and that many involved circumstances similar to the instant case. Although Theriault is a high school graduate with only three college credits in calculus, the absence of extensive formal education will not serve to disqualify an otherwise qualified expert. *See State v. Hurd,* 288 A.2d 478, 483 (Me.1972). The trial justice did not abuse his discretion in allowing Trooper Theriault to testify as an expert in accident reconstruction. *State v. Gammon,* 529 A.2d 813, 815 (Me.1987); *Longley,* 483 A.2d at 730.

### IV.

Prior to trial, Herbest entered a guilty plea to operating a motor vehicle while having 0.10 per cent or more by weight of alcohol in his blood. Because the charge under 29 M.R.S.A. § 1312–B was no longer before the court, Herbest objected to the court's instruction to the jury on the statutory presumptions set out in 29 M.R.S.A. § 1312(5),[5] contending that the jury should not consider the issue of Herbest's being under the influence of intoxicating liquor on the issue of whether he acted recklessly or with criminal negligence without expert testimony as to the effects of alcohol on the individual.

The language of section 1312(5)(C) was amended in 1981 to provide that the presumption that a person with 0.10 per cent or more by weight of alcohol in his or her blood is under the influence can be used "for purposes of evidence in proceedings other than those arising under section 1312–B or 1312–C." P.L.1981, ch. 468. Even prior to the amendment, we upheld the use of the presumption on the issue of whether a defendant was under the influence, and allowed its consideration by the jury in determining whether there was criminal negligence or reckless conduct in manslaughter cases. *State v. Carter,* 443 A.2d 958, 961 (Me.1982); *State v. Rhoades,* 380 A.2d 1023, 1026 (Me.1977); *State v. Hamilton,* 149 Me. 218, 227–29, 100 A.2d 234 (1953).

In instructing the jury on the presumptions of 29 M.R.S.A. § 1312(5), the trial justice used the "prima facie" language of the statute. M.R.Evid. 303(c), governing presumptions against an accused provides:

(c) *Instructing the Jury.* Whenever the existence of a presumed fact against the accused is submitted to the jury, the court in instructing the jury should avoid charging in terms of a presumption. The charge shall include an instruction to the effect that the jurors have a right to

---

**5.** 29 M.R.S.A. § 1312(5) (1978 & Supp.1987) provides:

A. If there was, at the time alleged, 0.05% or less by weight of alcohol in the defendant's blood, it is prima facie evidence that the defendant was not under the influence of intoxicating liquor.

B. If there was, at the time alleged, in excess of 0.05%, but less than 0.10% by weight of alcohol in the defendant's blood, it is relevant evidence, but it is not to be given prima facie effect in indicating whether or not the defendant was under the influence of intoxicating liquor within the meaning of this section, but such fact may be considered with other competent evidence in determining whether or not the defendant was under the influence of intoxicating liquor.

C. For purposes of evidence in proceedings other than those arising under section 1312–B or 1312–C, it shall be presumed that a person was under the influence of intoxicating liquor when he has a blood-alcohol level of 0.10% or more by weight.

Prior to 1981, section 1312(5)(C) read as follows:

C. If there was, at the time alleged, 0.10% or more by weight of alcohol in the defendant's blood, it is prima facie evidence that the defendant was under the influence of intoxicating liquor within the meaning of this section.

draw reasonable inferences from facts proved beyond a reasonable doubt and may convict the accused in reliance upon an inference of fact if they conclude that such inference is valid and if the inference convinces them of guilt beyond a reasonable doubt and not otherwise.

■■■ The trial justice's use of "prima facie" language as opposed to "inference" language required by Rule 303(c) was error. *State v. Liberty*, 478 A.2d 1112, 1116–17 (Me.1984); Field & Murray, §§ 303.3, 303.4, at 72–76. However, although Herbest objected to the court instructing on the presumptions of 29 M.R.S.A. § 1312(5), his objection did not focus on the language of the instruction, which would have allowed the trial justice to correct the instruction by using permissible inference language. *See Liberty*, 478 A.2d at 1117. Because of Herbest's failure to direct the court's attention to the prima facie language used, providing the opportunity for the instruction to be cured, we review that part of the instruction for obvious error affecting substantial rights under M.R. Crim.P. 52(b), in the context of the entire instruction. *State v. DeLong*, 505 A.2d 803, 806 (Me.1986); *State v. Quint*, 448 A.2d 1353, 1355 (Me.1982).

■■■ A review of the entire instruction reveals that the jury was properly instructed on the elements of manslaughter, on the presumptions of innocence, on the State's burden to prove all of the elements of manslaughter beyond a reasonable doubt and that the burden did not shift to the defendant; that they "may" find it important to consider whether Herbest was under the influence and that they "may" find that he was under the influence, but if they did, they had to "further" find that "in addition" to being under the influence, he was reckless or criminally negligent; and that the blood-alcohol level evidence was not conclusive, that they "may" accept it and that they could give it the weight they thought is deserved. The jury was not instructed that recklessness or criminal negligence could be inferred from the blood-alcohol test alone, or that Herbest was reckless or criminally negligent if he

was under the influence. *See Longley*, 483 A.2d at 731–32; *Carter*, 443 A.2d at 961. Rather, the jury was instructed "that if you were to find that the Defendant was under the influence, you could consider that together with all the other evidence relating to this issue of his—the nature of his behavior. And it may support or may negate, or may help, it may not, in your finding that the Defendant was or was not either reckless or acting with criminal negligence at the time." Viewed in the context of the entire instruction, the trial court's use of prima facie language in charging the jury on 29 M.R.S.A. § 1312(5) was not obvious error affecting substantial rights. *See State v. King*, 379 A.2d 131, 134 (Me.1977). Other claims of Herbest in regard to the section 1312(5) instruction are without merit and require no further discussion.

### V.

Herbest lastly contends that the evidence was insufficient to sustain a conviction of manslaughter. We will set aside a conviction on insufficiency of the evidence grounds only if, after viewing the evidence in a light most favorable to the State, no trier of fact rationally could find every element of the offense charged beyond a reasonable doubt. *State v. Barry*, 495 A.2d 825, 826 (Me.1985).

■■■ The evidence showed that Herbest operated his vehicle in a very erratic manner, repeatedly crossed the solid, double-yellow lines on Route 16, made a radical weave and nearly collided with another vehicle as he approached the scene of the collision. There was evidence that he reached a speed of 102 miles per hour, skidded for over 165 feet, and at a speed of 80 miles per hour, smashed into the rear end of a motorcycle travelling in its proper lane, causing the death of Michael Little. Moreover, there was evidence of Herbest being under the influence of intoxicating liquor. The evidence was sufficient to sustain the conviction.

Herbest's other claims of error are without merit and do not require discussion.

The entry is:

Judgment affirmed.

All concurring.