153-12 he/

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-10-646

ROBERT A. WORTHLEY

Plaintiff

v.

LESLIE ARSENAULT, et al.

Defendants

STATE OF MAINE
Cumberland. ss, Clerk's Office

JAN 05 2012

RECEIVED

ORDER

Before the court is the defendant's motion in *limine* to exclude Michael J. Festino's expert opinion that the defendant sustained permanent post-concussive syndrome and/or mild traumatic brain injury as a result of the accident at issue.[1]

## BACKGROUND

This case arises from a car accident occurring on February 27, 2010 on Route 1 in Wells. The Plaintiff, Robert Worthley, alleges that the Defendant, Leslie Arsenault, operated her vehicle negligently and caused him injuries, including personal physical injury. The Plaintiff also asserts a claim against Patriot Insurance Company, his uninsured motorist insurance carrier. The case has been settled as to Arsenault but the claim against Patriot Insurance Company remains.

## DISCUSSION

The Defendant seeks to exclude the opinion testimony of Dr. Festino, which states that the Plaintiff's ongoing cognitive complaints are caused

---

[1] At the motion hearing, Defendant's counsel argued that the motion seeks to preclude testimony concerning the diagnosis of mild traumatic brain injury and the permanency of this condition. At this stage of the proceedings, the analysis is the same for both areas of testimony.

1

by the mild traumatic brain injury or post-concussion syndrome suffered as a result of the accident. The Defendant's brief states: "Here, Dr. Brown and Dr. Kolkin both concede that Mr. Worthley suffered post-concussion syndrome (Dr. Brown) or, a mild traumatic brain injury (Dr. Kolkin). "[2] (Def. Br. 7.) Dr. Kolkin also writes that there is no medical link between this kind of injury and a persistence of post-concussion symptoms for longer than 6 months. (*See* Def. Br. Ex. F. attachments.) In contrast, Dr. Festino opines that the Plaintiff's symptoms of headaches, forgetfulness, and concentration issues, continuing for more than 6 months from the date of the accident, are caused by the injuries suffered during the accident. The Defendant's argument appears to be largely premised on the fact that Dr. Brown identified several other pre-existing conditions that could also potentially be the cause of the Plaintiff's "ongoing cognitive complaints." (Def. Mot. 6.) Thus as the two expert's conflicting opinions demonstrate, the critical issue in this case is causation.

The Defendant argues that Dr. Festino is not a neurologist and, therefore, lacks experience in the fields of neurology and neurosurgery, that his opinion is based solely on the literature review he conducted on post-concussion syndrome and mild traumatic brain injury, and that his opinion is not reliable because the articles on which he relied do not support his opinion.

Maine Rule of Evidence 702 establishes the standard for the admission of expert testimony. It states:

---

[2] Dr. Brown is the neurology specialist to whom Dr. Festino referred Mr. Worthley for examination. He has also been listed as an expert witness for the Plaintiff. Dr. Kolkin is the Defendant's expert witness. Dr. Kolkin's report does not exactly concede that Mr. Worthley suffered a mild traumatic brain injury. It states "At most, according to Dr. Brown's history 3 months later, Mr. Worthley suffered a mild traumatic brain injury." It's a slight difference but it seems as though the Defendant is not going to ultimately concede that a mild traumatic brain injury was suffered.

2

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

"A proponent of expert testimony must establish that (1) the testimony is relevant pursuant to M.R. Evid. 401, and (2) it will assist the trier of fact in understanding the evidence or determining a fact in issue." *Searles v. Fleetwood Homes of Pa., Inc.*, 2005 ME 94, ¶ 21, 878 A.2d 509 (citing *State v. Williams*, 388 A.2d 500, 504 (Me. 1978)). The proposed testimony must also meet a threshold level of reliability. *Id.* at ¶ 22. The arguments that the Defendant offers for exclusion relate to the qualification of Dr. Festino and the reliability of his proposed testimony.

*a.     Knowledge and Training as a Neurologist*

A witness does not need to be a board-certified neurologist or neurosurgeon in order to give expert opinion testimony regarding the neurology specialty. *See Hanson v. Baker*, 534 A.2d 665 (Me. 1987). However, in *Hanson*, the trial court excluded testimony of the plaintiff's medical expert, a general practitioner with experience as an emergency room physician, regarding the "time specific progression of bruises and bleeding in the brain" but allowed the same expert's testimony regarding the standard of care and whether the conduct met that standard. *Id.* at 667. The Law Court affirmed, not because the expert was not board certified but because he lacked education and experience in the field of neurology. The court said, "Moreover, the [trial] court stated that Dr. Brinker's emergency medicine and autopsy experience was no substitute for experience in the distinct fields of neurology and neurosurgery." *Id.*

3

This case is distinct because Dr. Festino is not proposing to testify regarding the standard of care that should have been exercised nor offer the conclusion that a different course of care would have resulted in a different outcome for the patient. Instead, he is proposing to testify as to his own diagnosis of the patient. Neither party has offered any testimony regarding Dr. Festivo's experience and/or training in the neurology field. The Plaintiff's attorney, in the opposition to the motion, states that Dr. Festino has explained the overlap in training between internists and neurologists (Pl. Br. 4) and that he is qualified to make this type of diagnosis (Pl. Br. 5) but does not provide citations to Dr. Festino's deposition for support.[3] It appears that there is a distinction between the training of an internist and that of a general practitioner such that *Hanson* is distinguishable. However, without evidence of how much experience and training Dr. Festino has with the neurology specialty, it is difficult to determine at this stage of the proceedings whether his opinion is sufficiently reliable.

b.      *Literature Review*

The Defendant also argues that Dr. Festino's testimony fails to qualify as expert testimony because it is based only on information that he read in medical articles. The Defendant cites to several cases supporting this argument. In *United States v. Paul*, 175 F.3d 906 (11th Cir. 1999), a lawyer was not permitted to testify as an expert on handwriting analysis where his only training was "reviewing the literature in the field of document examination." *Id.* at 912. In *Winner Brothers, LLC v. Seitz Electric Inc.*, 912 N.E.2d 1180 (Ohio App. 2009), the

---

[3] The court will not search the record for citations and references. It is up to counsel to properly provide record citations for a party's assertions.

4

court did not permit expert testimony that was entirely based on specific statements made in the literature and was "a conduit for the out-of-court statements of others." *Id.* at 1196-97. And, in *Boehmer v. North Branch Food Lockers, Inc.*, 2007 Mich. App. LEXIS 2303, the court held that an expert's testimony regarding safety at a slaughterhouse was improperly allowed when the expertise was only gained from reading articles and the individual had had almost no interaction with cattle in the previous fifty years. *Id.* at *3.

This case is different from the three cases cited by the Defendant. In each of those cases the expert had *no* experience in the field in which they were offering opinions and so their literature review did not provide them any more expertise than a layperson. In this case, Dr. Festino has expertise beyond that of a layperson because he is a doctor. He also suggests that there is significant overlap between the training of an internist and a neurologist. (Pl. Opp. 3.) When Dr. Festino read the literature on mild traumatic brain injury and post-concussion syndrome he was able to incorporate that knowledge into his other medical knowledge to form an expert medical opinion. Therefore, the literature review is really only one component of his knowledge and not the entire basis of the opinion. The Plaintiff has not suggested that Dr. Festino will seek to introduce specific statements from the literature such that he would be a "conduit" for hearsay statements and the court will not permit this.

c.    *General Reliability*

The Defendant argues that Dr. Festino's opinion is not reliable because it is inconsistent with generally accepted theories in the field: that is, Dr. Festino has made a diagnosis of post-concussion syndrome where the evidence is that

5

Mr. Worthley never lost consciousness and the generally accepted theory is that without loss of consciousness there is no concussion. The Defendant cites to an article that Dr. Festino used in making his diagnosis, attached as Exhibit G to its brief, and states that Dr. Festino's opinion is inconsistent with the "most commonly accepted definition of concussion." (Def. Br. 9.) However, the second paragraph of this article states:

> There is uncertainty about the definitions of mild traumatic brain injury and concussion. There is further uncertainty about the definition of post-concussion syndrome and the cause and treatment of PCS.

(Def. Br. Ex. G.) Whether or not loss of consciousness or reduced mental state are necessarily symptoms of mild traumatic brain injury or post-concussion syndrome does not appear to have been conclusively determined by the medical literature. Therefore, Dr. Festino's diagnosis of these conditions, even without evidence of loss of consciousness of Mr. Worthley, is not automatically unreliable.

Furthermore, the fact that an expert seeks to introduce an alternative to an excepted scientific theory, does not make it inherently unreliable. *State v. Boutilier*, 426 A.2d 876, 879 ("We do not intimate that 'general scientific acceptance' is a *sine qua non* of a proposed method of determining facts; what we do regard as requisite to the admissibility of proffered expert testimony is a showing of *sufficient reliability* to satisfy the evidentiary requirements of relevance and helpfulness, and of avoidance of prejudice to the defendant or confusion of the fact-finder."). Dr. Festino's opinion is also supported by Dr. Brown's opinion that Mr. Worthly's symptoms are "consistent with" post-concussive syndrome although the persistence of the symptoms is "atypical." (*See* Def.'s Mot Ex E.) Regardless, ultimately whether Dr. Festino's testimony is

admissible will turn on his testimony at *voir dire* concerning his education and experience in neurology. The court cannot determine the extent of Dr. Festivo's qualifications, the extent of his permissible testimony and any limitations that may ultimately placed upon his testimony until these issues are flushed out at trial.

## CONCLUSION

The motion in *limine* to exclude Dr. Festino's opinion is denied, but may be renewed at trial.


DATE: January 5, 2012

_____
Joyce A. Wheeler
Justice, Superior Court

7

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-10-646
JAW - CuM - 3/22/2012

ROBERT A. WORTHLEY

Plaintiff,

v.

LESLIE ARSENAULT and
PATRIOT INSURANCE COMPANY

Defendants,


STATE OF MAINE
Cumberland ss Clerk's Office
MAR 22 2012
RECEIVED

## ORDER ON DEFENDANT'S MOTION TO DISMISS

Defendant Leslie Arsenault moves for an order dismissing the Plaintiff,

Robert Worthley's claim against her, pursuant to M.R. Civ. P. 41(a)(2).

Defendant, Patriot Insurance Company filed a timely objection to Arsenault's

motion to dismiss and the Plaintiff filed a response to Patriot's objection.

## BACKGROUND

This case arises from a vehicle collision that occurred in February 2010

between vehicles operated by Worthley and Arsenault. At the time of the

accident Mr. Worthley was covered by an underinsured motorist policy issued

by defendant Patriot Insurance Company ("Patriot") and Arsenault was covered

by a State Farm policy with a $50,000 limit. The plaintiff, Mr. Worthley, brought

this action against Arsenault alleging negligence and against Patriot on an

uninsured motorist claim. Mr. Worthley has settled his claim against Ms.

Arsenault for $35,000 and now she seeks to be dismissed from the case.

1

## DISCUSSION

Patriot does not object to the dismissal of Arsenault based on the settlement between the Plaintiff and Arsenault. The basis of its objection is as to this case proceeding solely in its own name where the question at trial will be the liability of Arsenault.[1] Patriot requests that the case proceed with Arsenault being the sole named defendant because of the policy against introducing evidence of insurance in negligence cases.

There is a strong policy in Maine that "insurance in negligence cases is immaterial, prejudicial, and not admissible." *Deschaine v. Deschaine*, 153 Me. 401, 407, 140 A.2d 746 (1958). M.R. Civ. P. 17(a) creates an exception to the rule requiring a claim to be prosecuted in the name of the real party in interest when an insurer is subrogated to a claim of an assured. Furthermore, the Maine Rules of Evidence make the fact of liability insurance inadmissible to prove that person acted negligently or wrongly. M.R. Evid. 411. However, the Law Court has explicitly authorized insured people to bring an action directly against their insurance company in an uninsured motorist claim without first having to obtain a judgment against the uninsured. *Greenvall v. Maine Mutual Fire Ins. Co.*, 1998 ME 204, ¶ 8, 715 A.2d 949. Unlike a typical insurance defense, where the insurer has a contractual obligation to defend the insured, in an uninsured motorist claim the insurer no longer is hidden behind the veil of the allegedly at-fault driver.

---

[1] The parties also raise the question of whether Patriot should be entitled to a $50,000 credit (Arsenault's policy limit) or a $35,000 credit (the amount of the settlement) against any jury award in favor of the Plaintiff. This issue, although discussed by the parties, is not before the court on Defendant Arsenault's motion to dismiss and is not addressed herein.

Although Patriot's liability is dependent upon Arsenault's liability, Patriot is a named defendant under a claim separate and independent from the negligence claim being dismissed. The court sees no reason to hide the fact that there is an uninsured motorist claim against the only remaining defendant.

**The entry is:**

Defendant Arsenault's Motion to Dismiss the Plaintiff's claim against her is GRANTED. This case will proceed against Defendant Patriot Insurance Company as the sole remaining named defendant.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: 3/21/12

Joyce A. Wheeler
Justice, Superior Court

3

Plaintiff Robert A Worthley- Peter Clifford
 Esq
Defendant Arsenault-J William Druary Esq
Defendant Patriot Insurance --Jonathan Brogan
 Esq