STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, ss                            KENCD-CR-17-1009


**STATE OF MAINE**

**v.**                          **COMBINED ORDER ON MOTIONS**

**SCOTT BUBAR**


Before the Court are two motions, the State's Motion in Limine to allow introduction of statements made by Jenny Shorey to a 911 operator, and Defendant's Motion to Suppress statements made by the Defendant to law enforcement. Hearing on the motions was held on August 16, 2018. The Court will address each motion in turn.

*Motion in Limine*

The State is seeking admission of statements made by Ms. Shorey[1] to a 911 operator on May 19, 2017. The Court has reviewed the parties' filings, the testimony at hearing, and has heard the recording made of these statements. For reasons stated, the Motion in Limine is granted in part. Some of the statements made are admissible as statements of then-existing emotional, or physical condition, some are admissible as present sense impressions, and some are admissible as excited utterances.

---

[1] Originally the State was seeking admission of two other sets of statements by Ms. Shorey but as of the date of the hearing on these motions the Court was informed that the only statements at issue were the statements made by her to the 911 operator.

1

Under M.R. Evid. 803(3) a statement that is otherwise hearsay may be admitted if it is a statement of the declarant's then-existing emotional state of mind (such as motive, intent, or plan) or emotional sensory or physical condition (such as mental feeling, pain, or bodily health). The parties seem to agree that some of Ms. Shorey's statements qualify as exceptions under this Rule but did not specify in the written filings which ones qualify or not.

Under M.R. Evid. 803(1) a statement that is otherwise hearsay may be admitted if it is a "statement describing or explaining an event or condition made while or immediately after the declarant perceived it." Just as with respect to the exception under Rule 803(3) the parties seem to agree that some of Ms. Shorey's statements qualify as hearsay exceptions but have not been specific in their filings on this issue.

The parties' fundamental disagreement has to do with the excited utterance exception under Me. R. Evid. 803(2). In *State v. Barnies*, 680 A.2d 449 the Law Court set out the findings a court must make in order to admit evidence under the "excited utterance" exception of Me. R. Evid. 803(2). The Law Court held that these findings were preliminary questions for the trial court under Rule 104. In order to determine if the exception applies to the statement, the Court must find: (1) that a startling event occurred; (2) that the hearsay statement related to the startling event; and (3) that the hearsay statement was made while the declarant was under the stress of the excitement caused by the event." Id. at 451.

The Law Court has also held that the stress of "conscience, guilt or fear are not to be equated with the stress of excitement." *State v. Lafrance*, 589 A. 2d at 45. It has also held that the statement must be "spontaneous and unreflecting" and made "before there has been time to contrive and misrepresent." *Id.*

2

In *State v. Ellis*, 297 A.2d at 93 the Law Court stated that under "certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock."

The Court finds that the last shots fired in this incident occurred around 1044 pm. The 911 statements by Ms. Shorey were made approximately a half an hour later. Jenny Shorey is a bed-ridden woman who was confined in this shooting incident and "standoff" to her bed which was in the trailer's living rooms. Her long-standing boyfriend and his son, the Defendant, had been shot by law enforcement officers and her boyfriend was killed. During the call, which lasts approximately 21 minutes and 57 seconds, she tells the 911 operator that she is scared, that she wants the police to "get here soon though" and she is heard at several places moaning.

The Court finds that many of her statements qualify as excited utterances, and alternatively many of them qualify as exceptions under Rule 801(1) and/or Rule 803(3). While Ms. Shorey is not shouting into the phone it is clear to the Court that she is terrified at the beginning of the interview and still subject to the nervous excitement produced by the exchange of gunfire between the police and the Defendant and her father. She seems aware that her boyfriend is dead, that the Defendant is seriously wounded, and she had almost been hit by gunfire herself. Her physical inability to defend herself or move away from the gunfire would obviously have produced the kind of physical shock the exception contemplates. However, it is also clear to the Court that at some point in the interview the exchange between Ms. Shorey and 911 operator becomes more conversational and the Court finds that at that point the shock produced by the violence she experienced had diminished sufficiently that the Court cannot find

3

her remaining statements qualify as exceptions to hearsay rule. They may, however, be admissible still under Rule 803(1) and/or Rule 803(3).

The Court therefore concludes as follows:

1) Statements of Ms. Shorey on page one are admissible under either Rule 803(2) or Rule 803(3).

2) Statements of Ms. Shorey on page two are admissible under 803(2). They are also admissible under either Rule 803(1) or Rule 803(3).

3) Statements of Ms. Shorey on page three are admissible under Rule 803(2). They are also admissible under either Rule 803(1) and/or Rule 803(3).

4) Statements of Ms. Shorey on page four are admissible under Rule 803(2). They are also admissible under either Rule 803(1) and/or Rule 803(3).

5) Statements of Ms. Shorey on page 5 are admissible under Rule 803(2). They are also admissible under either Rule 803(1) and/or Rule 803(3).

6) Statements of Ms. Shorey on page 6 are admissible under Rule 803(2). They are also admissible under Rule 803(1) and/or Rule 803(3).

7) Statements of Ms.Shorey on page 7 (through her answer "No" to the question "He won't answer you?") are admissible under Rule 803(1). All other statements on that page from Ms. Shorey are not admissible under any proffered exception.

8) Statements of Ms. Shorey on page 8 are admissible under Rule 803(1) and/or 803(3).

9) Statements of Ms. Shorey on page 9 are not admissible under any of the proffered exceptions.

10) Statements of Ms. Shorey on page 10 are not admissible up to when the 911 operator asks her to call out to the Defendant. After that her statements are admissible under Rule 803(1) and/or 803(3).

11) Statements of Ms. Shorey on page 11 are admissible under Rule 803(1) and/or 803(3).

12) Statements of Ms. Shorey on page 12 are admissible either because they are not hearsay or as exceptions under Rule 803(1).

13) Statements of Ms. Shorey on page 13 are admissible as they are not hearsay.

*Motion to Suppress Statements of Defendant*

In this motion the Defendant challenges statement made by the Defendant after being shot by a Sheriff's deputy who was among a number of law enforcement officers who responded to a report that shots had been fired in the vicinity of a trailer owned by Defendant's father in Belgrade. The statements of the Defendant at issue are first, his statement that his gun was "in the kitchen" which he is heard making on the 911 case placed by Ms. Shorey. The defense claims that this statement was not admissible under the public safety exception and also that it was involuntary. The Defendant made another statement to law enforcement when he was taken into custody but not given *Miranda* warnings. The Defense claims that this statement should be suppressed as he was in custody, did not receive the warnings, that no public safety exception applies, and that the statements were involuntary.

With respect to the statement made by the Defendant while in the trailer that his gun was in the kitchen, the Court finds that he was not in custody under *State v. Leonard*, 2002 ME

5

125 which factually is similar to the allegations made against the Defendant in this case. After locating a felony suspect in that case at his residence, and seeing what they believed to be a weapon, police fired tear gas canisters at into his residence. The suspect fired at police from his home and the police returned fire. After he surrendered to the police he filed a motion to suppress statements made to police during the standoff and on the way to the hospital. The Law Court stated: "Certainly during the standoff, Leonard was not free to leave. Just as certainly, he was not in the custody and control of the police." Id. at par. 9. Finding that the statements were not made during custodial interrogation, the Law Court found that no *Miranda* warnings were warranted.

Further, the Court agrees with the State that the statements are within the public safety exception established by the United States Supreme Court in *New York v. Quarles*, 467 U.S. 649 (1984). The questions put to the Defendant here were limited, appropriate, necessary and were motivated by a concern for public safety.

With respect to the statements made to law enforcement officers after his surrender regarding the location of firearms, the Defense argues that he was in custody, no *Miranda* warnings were given, and the statement "in the kitchen' should be suppressed.

The Court finds that the Defendant was in fact in custody for purposes of *Miranda* when this statement was made, but again given the timing of the interrogation, just after his arrest, the public safety exception applies. While Ms. Shorey told law enforcement by this time that the Defendant's father was dead, it was not unreasonable for the officer's concern for their safety, as well as the safety of Ms. Shorey, to be ongoing in the moment the question was asked.

Finally, the Defendant argues that even if admissible under the public safety exception, both statements are inadmissible in that the State has not proven that they were voluntary beyond a reasonable doubt. *State v. Mikulewicz*, 462 A.2d 497, 501 (Me. 1983). A statement is voluntary of it results "from the free choice of a rational mind, if it is not the product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *Id*. at par. 16.

The Court finds for the following reasons that the State has proven beyond a reasonable doubt that the statements were voluntary. There is evidence in the record regarding the Defendant's physical condition, namely that he had been shot by the police, that he lost a sufficient amount of blood to leave impressive amounts of visible stains, and that he emerged from the trailer naked wearing only a blanket. There is also evidence in the record that he had been drinking. Both of these circumstances could call into question whether the statements regarding the location of the gun resulted from the free choice of a rational mind.

However, the State has provided testimonial evidence from eyewitnesses about the Defendant's functioning in the moments before the statements were made that make it almost certainly true that the statements he made regarding the location of the guns, both from inside and outside the trailer, were voluntary. Sgt. Tyler Stephenson testified that while the Defendant was still in the house that he was trying to engage him in a conversation to encourage him to come out peaceably. The Defendant responded by telling him that he had been shot, and that he needed medical treatment for his injury. He testified that shortly after when the Defendant exited the trailer he was able to follow commands, and when told to drop the blanket and get on his knees he readily complied. When asked where the guns were he said that his father's was with his father, and that his was in the kitchen. While he had

7

previously stated from the trailer that he could not move, it is clear he had only minimal problem ambulating to the outside. Sgt. Mark Ferreira echoed these observations of the Defendant, as did Detective Gregory Roy who described the Defendant as responding without hesitation, and cooperative.

In addition, there is on this record no evidence of improper inducement, improper use of physical force, or coercion by law enforcement. See e.g., *State v. Wiley*, 2013 ME 30. The Court therefore concludes that under all of the circumstances the admission of the Defendant's statements regarding the location of the guns would be fundamentally fair.

The entry will be: State's Motion in Limine is GRANTED in part. The Defendant's Motion to Suppress is DENIED.

_____
7/7/18
**DATE**

_____
**SUPERIOR COURT JUSTICE**

8